Slip Op. 21-34

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES,**<br><br>    Plaintiff,<br><br>v.<br><br>**GREENLIGHT ORGANIC, INC.<br>and PARAMBIR SINGH AULAKH,**<br><br>    Defendants. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 17-00031 |

## OPINION AND ORDER

[Granting Defendants' motion for a protective order, granting in part and denying in part Defendants' motion to compel, and granting in part Defendants' motion to amend the scheduling order.]

Dated: March 30, 2021

William Kanellis and Kelly Krystyniak, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Plaintiff United States.  With them on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

Robert B. Silverman and Joseph M. Spraragen, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of New York, N.Y., for Defendants Greenlight Organic, Inc. and Parambir Singh Aulakh.

Choe-Groves, Judge:  This matter involves a discovery dispute in a claim brought under 19 U.S.C. § 1592.  Plaintiff United States ("Plaintiff" or "the Government") brings this 19 U.S.C. § 1592 civil enforcement action seeking to recover unpaid duties and fees and to affix penalties, alleging that Greenlight Organic, Inc. ("Greenlight") and Parambir Singh "Sonny" Aulakh ("Aulakh") (collectively, "Defendants") imported wearing apparel into the United States fraudulently.  Second Am. Compl. ¶ 1, ECF No. 124 ("Second Am. Compl." or "Second Amended Complaint").  Section 1592 prohibits false statements or the omission of material information in the course of importing merchandise into the United States through fraud, gross negligence, or negligence.  19 U.S.C. § 1592(a)(1).  Plaintiff alleges that Greenlight misclassified and undervalued its entries of subject merchandise fraudulently in violation of 19 U.S.C. § 1592(a)(1).  Second Am. Compl. ¶ 1.

Before the court are three motions filed by Defendants.

The first motion is Defendants' Motion for Protective Order Precluding the Government from Requiring the Deposition Locations of Monika Gill, Neel-Kamal Aulakh, Apramjeet Singh, and Parambir Aulakh to be the U.S. Custom House in San Francisco, ECF No. 145 ("Motion for Protective Order" or "Mot. Protective Order").  Defendants requested that the court prohibit the Government from requiring Monika Gill, Neel-Kamal Aulakh, Apramjeet Singh, and Defendant

Aulakh to travel to the U.S. Customs House in San Francisco in the midst of the COVID-19 pandemic to appear in person for depositions, and requested instead that the court order the depositions to take place remotely via videoconference at the witnesses' respective residences or other agreed-upon locations. Mot. Protective Order at 1.

The second motion is Defendants' Expedited Motion for an Order Compelling Plaintiff for Production of a Properly Produced Privilege Log; and a Complete Production Response, ECF No. 146 ("Motion to Compel" or "Mot. to Compel"). Defendants requested that the court order Plaintiff to produce five categories of documents, namely: (1) documents regarding entry-specific loss of revenue calculations and domestic value calculations; (2) an updated privilege log regarding documents cited as "3-01;" (3) government instructive manuals; (4) previously produced documents; and (5) other critical documents. Mot. to Compel at 8, 10, 11, 15, 17–18.

The third motion is Defendants' Motion to Amend the Scheduling Order, ECF No. 144 ("Motion to Amend Scheduling Order" or "Mot. to Amend"). Defendants requested "additional time to resolve discovery disputes; to complete the review of voluminous documents that have been exchanged in this case; to exchange additional outstanding production in preparing for depositions; and to

afford the [P]arties time to narrow the issues through requests for admission[]." Mot. to Amend at 1–2.

Plaintiff opposed all three motions. See Pl.'s Consol. Resp. Defs.' Filings Mar. 18, 2021, ECF No. 147 ("Pl. Consol. Resp."). Defendants filed a reply to Plaintiff's opposition. See Defs.' Proposed Reply Pl.'s Consol. Resp. Defs.' Filings Mar. 18, 2021, ECF No. 152. The court held a videoconference with the Parties regarding the three motions on March 23, 2021. See Status Conference, ECF No. 153 ("March 2021 Status Conference" or "Mar. Status Conf."). The court will address each motion in turn.

## DISCUSSION

### I. Legal Standard

District courts have broad discretion in deciding discovery matters. See generally Accent Packaging, Inc. v. Leggett & Platt, Inc., 707 F.3d 1318, 1329 (Fed. Cir. 2013) (acknowledging the court's discretion in denying additional discovery); Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) (stating that "[q]uestions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court"). Discovery must be relevant to the issues in the case, including any party's claim or defense, or reasonably calculated to lead to the discovery of admissible evidence. See USCIT R. 26(b)(1).

## II. Motion for Protective Order

Defendants requested a protective order to prevent Monika Gill, Neel-Kamal Aulakh, Apramjeet Singh, and Defendant Aulakh from being deposed in person, and instead to allow these witnesses to be deposed remotely via videoconference due to the health risks associated with travel and appearing in person during the COVID-19 pandemic. Mot. Protective Order at 1, 5–7. The Government objected to this request and claimed that there was no credible reason why the witnesses "could not attend a deposition at the U.S. Customs [H]ouse following COVID protocols." Pl. Consol. Resp. at 15.

At the March 2021 Status Conference, the Government stated that counsel was willing to conduct depositions that the court characterizes as "semi-remote," in which counsel for the Government and Defendants would appear remotely by videoconference from Washington, D.C. and New York, N.Y. respectively, while three of the witnesses would be present in person for their depositions at the U.S. Customs House in San Francisco. See Mar. Status Conf. at 3:35–4:20; 10:37–46. Notably, the Government agreed to allow one witness who is eighty years old to appear via videoconference rather than travel to the U.S. Customs House in San Francisco to testify in person. Id. at 3:12–27. The Government argued that it is necessary to have the witnesses appear in person so they could be shown documents during their depositions. See id. at 4:35–5:50. The court advised

counsel that videoconference technology allows for electronic document sharing and screen sharing, which would eliminate the need for the witnesses to appear in person in order to review any documents. Id. at 10:50–12:10. Defendants objected to having the witnesses appear in person due to health risks associated with travel and staying indoors for an extended period of time with others during the depositions in light of the current COVID-19 pandemic. Mot. Protective Order at 5–7; see also id. at 5:58–7:25.

USCIT Rule 26(c)(1) stipulates that the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during discovery proceedings. USCIT R. 26(c)(1). The moving party must confer with the other affected parties to resolve the dispute and show good cause for a protective order. See id.

The court takes judicial notice that travel and remaining indoors for extended periods of time with other people during the COVID-19 pandemic poses personal health risks. See generally Covid-19, CTR. DISEASE CONTROL & PREVENTION, available at https://www.cdc.gov/coronavirus/2019-ncov/index.html (last visited Mar. 30, 2021). The Government's proposal for depositions, even following the Government's suggested "COVID protocols," would require each witness to travel to be deposed in person, to interact with other people indoors, and to spend at least several hours, if not several days each, in an enclosed office space

during the depositions. Counsel for Defendants identified numerous health-related reasons why the individual witnesses object to appearing in person at their depositions, offering that all of the witnesses are willing to appear instead remotely by videoconference. The court notes that the attorneys under this proposed arrangement would not undertake travel themselves but would appear remotely by video.

The court concludes that prioritizing in-person depositions over potential health risks would pose an undue burden on the witnesses during the COVID-19 pandemic. See USCIT R. 26(c)(1). It would be highly burdensome to require the witnesses to appear in person due to their concerns over the potential health risks involved, while it would be much less burdensome and far safer for the witnesses to testify remotely via videoconference. In either case, the same result would ensue because the witnesses are willing to provide deposition testimony under oath and be cross-examined by the Government. In a remote videoconference, the main differences would be that the witnesses would be shown electronic documents through screen sharing and would not need to wear a face mask while speaking.

In addition, the Government expressed concerns that Defendant Aulakh might "[cut] off communication [via videoconference] to avoid responding to a question." Pl. Consol. Resp. at 15. The court observes that there is no evidence to suggest that Defendants would engage in such behavior, and any appropriate

motions may be filed if depositions cannot be completed.  The court will not order in person depositions to prevent disruptive behavior that is purely speculative.

The court will not compel the witnesses to travel and undertake health risks against their will to appear in person for depositions, particularly when videoconference court proceedings have become second nature in this Court over the past year during the COVID-19 pandemic.  Defendants have shown good cause and the court grants the Motion for Protective Order.

    III.    **Motion to Compel**

        A.    **Documents Regarding Entry-Specific Loss of Revenue and Domestic Value Calculations**

Defendants requested loss of revenue and domestic value calculations for each entry that Plaintiff alleged were entered fraudulently.  Mot. to Compel at 9.

During the March 2021 Status Conference, the Government explained that an alternative loss of revenue and domestic value methodology was employed in lieu of the entry-by-entry appraisal method due to gaps within the record caused by Defendants' alleged destruction or loss of evidence.  See Mar. Status Conf. at 22:35–23:17; Pl. Consol. Resp. at 12.

Defendants stated that they were in the process of creating the entry-by-entry analyses themselves.  Id. at 31:50–32:16.  Defendants asserted that they were entitled to the requested information and reiterated their demand for the Government to produce an entry-by-entry appraisal that would reflect "all the

details, loss of revenue, and domestic value for all the goods of every entry." Id. at 32:16–20, 32:36–45.

The issue of whether the Government is required to provide an entry-by-entry analysis, or whether the Government is permitted by regulation to use an alternative sampling methodology to calculate Defendants' duty and penalty amounts, is a legal matter that will be resolved in this litigation during either the dispositive motion phase or at trial. See generally Pl. Consol. Resp. at 12; 19 C.F.R. § 163.11(c)(3)(i) (providing that the Government may use statistical sampling techniques when "[r]eview of 100 percent of the transactions is impossible or impractical"). If the case proceeds to trial, the jury will be instructed as to the appropriate law that applies. At this stage of discovery, therefore, the court concludes that Defendants' requests for entry-by-entry calculations are relevant to the issues in the case, but are outside the scope of the Government's relative access to relevant information under USCIT Rule 26(b)(1). The court will not compel Plaintiff to produce documents that it does not have in its possession, nor will the court compel Plaintiff to create documents based on documents that it does not have in its possession. The Motion to Compel is denied in part regarding entry-specific loss of revenue and domestic value calculations.

### B.     Privilege Log For Documents Cited as "3-01"

Defendants requested an updated privilege log regarding documents cited as "3-01," over which the Government had asserted privilege.  See Mot. to Compel at 11.  During the March 2021 Status Conference, however, the Government clarified that it had mistakenly identified documents cited as "3-01" as privileged.  See Mar. Status Conf. at 44:35–45:45.  The Government clarified further that documents cited as "3-01" had been produced to Defendants earlier in discovery.  Id. at 43:20–40; see also Mot. to Compel Ex. 6.  Upon this representation, Defendants withdrew their request for an updated privilege log for documents cited as "3-01."  Id. at 46:46–56.

### C.     Government Instructive Manuals

Defendants requested any government instructive manuals regarding the "processes for fraud investigations, including process for the identification and recordation of fraud."  Mot. to Compel at 11.  The Government asserted that it was unaware of any such manuals.  Pl. Consol. Resp. at 13.  At the March 2021 Status Conference, the Government confirmed that it was still unaware of such manuals after inquiring within the Government about the existence of any fraud investigation instructive manuals.  Mar. Status Conf. at 59:05–1:00:17, 1:09:00–05.  Defendants' counsel claimed that it had received government instructive manuals previously in other litigations.  Id. at 1:03:00–19.  The court has not seen

any such evidence provided by any parties in this case. Counsel for the Government reiterated that any such documents do not exist to the best of counsel's knowledge and argued in the alternative that, if such manuals did exist, Plaintiff would assert privilege over them. Id. at 1:09:00–28.

The Government represented in court filings and at the March 2021 Status Conference on the record that it did not have knowledge of or possession of government instructive manuals regarding fraud investigations responsive to Defendants' request. Because the court has not seen any evidence of the existence of government instructive manuals presented by either Plaintiff or Defendants, and the Government's counsel confirmed on the record that it does not have any such documents, the court has no reason to doubt the veracity of the Government's assertion that it does not have knowledge of or possession of any government instructive manuals regarding fraud, absent evidence to the contrary. The court concludes that while Defendants' request may be relevant to the issues in the case, discovery of government fraud instructive manuals is outside the scope of the Government's relative access to the information under USCIT Rule 26(b)(1). The court will not compel Plaintiff to produce documents that counsel has explained do not exist. The Motion to Compel is denied in part regarding government instructive manuals.

### D.　Previously Produced Documents

Defendants stated that Plaintiff objected to Defendants' interrogatories "on the basis that [D]efendants [were] already in possession of the requested evidence." Mot. to Compel at 15. During the March 2021 Status Conference, the Government explained that it had produced all non-privileged requested documents previously to Defendants. Mar. Status Conf. at 1:13:12–14:45, 1:15:20–17:17; see also Pl. Consol. Resp. Ex. 7. Upon this representation, Defendants withdrew their request for previously produced documents. Mar. Status Conf. at 1:14:50–15:08.

### E.　Other Critical Documents

Defendants requested "other critical documents" related to customs brokers and "native format." Mot. to Compel at 17. Plaintiff stated that it produced all non-privileged, responsive documents to Defendants. Pl. Consol. Resp. at 10.

#### 1.　Documents Related to Customs Brokers

During the March 2021 Status Conference, Defendants stated initially that Plaintiff did not respond to their request for documents related to customs brokers; upon further discussion, Defendants clarified that the Government had identified too many responsive documents, and instead Defendants requested that the Government identify a subset of the most relevant information related to customs brokers within the range of responsive documents. Id. at 1:17:36–18:15, 1:30:47–31:24. Plaintiff cited correspondence with Defendants' counsel that identified a

range of responsive documents and asserted that each document related directly to Defendants' requests. Id. at 1:21:10–22:20, 1:31:30–32:40; see also Pl. Consol. Resp. Ex. 7.

The court will limit discovery if it determines that the discovery sought can be obtained from some other source that is less burdensome. USCIT R. 26(b)(2)(C)(i). Upon review of Plaintiff's response to Defendants, the court observes that the Government identified approximately 3,100 pages of responsive documents that relate to customs brokers, which does not appear to be unreasonable considering that this is a customs fraud case involving potential duties, fees, and penalties of nearly $3.5 million. Pl. Consol. Resp. Ex. 7; see also Second Am. Compl. ¶ 1. The universe of approximately 3,100 pages of responsive documents is not too burdensome for Defendants' law firm to review without further assistance from the Government. Indeed, that is the nature of litigation. Balancing whether the court should compel the Government to identify which of the approximately 3,100 pages of documents contain the most relevant information about customs brokers, as opposed to requiring Defendants' law firm to review those responsive documents already produced, the court concludes that it is less burdensome for Defendants' counsel to review the responsive document production on its own. The court will not compel the Government to assist Defendants' counsel by choosing a subset of the most relevant documents related

to customs brokers from among the responsive documents already produced to Defendants. The Motion to Compel is denied in part regarding documents related to customs brokers.

### 2. Documents in "Native Format"

Defendants requested that Plaintiff produce replacement copies of illegible documents that were marked as "native format," and Plaintiff clarified that a technological error caused these documents to be illegible. Plaintiff offered to cure the problem by producing correctly formatted, legible replacement documents to Defendants. See Mar. Status Conf. at 1:32:57–33:44; see also Mot. to Compel at 18 (requesting new versions of US0004044, US0004047, and US0004105). The Motion to Compel is granted in part with respect to "native format" documents.

### IV. Motion to Amend Scheduling Order

Defendants requested a five-month extension to produce and review additional documents, prepare for and complete fact and expert depositions, and propound requests for admission. Defs. Mot. to Amend at 1–2. Plaintiff objected to an extension and sought to maintain the expedited deadlines set forth in Scheduling Order, ECF No. 142. Pl. Consol. Resp. at 8–9. Plaintiff asserted that requests for admission were submitted in 2017. Mar. Status Conf. at 1:44:32–50. The court notes that Defendants' current counsel first appeared in this case nearly two years ago in April of 2019, after replacing several former counsel for

Defendants.  See Form 11 Notice of Appearance, ECF Nos. 114, 125.  Defendants' current counsel is certainly not new to the case and has had nearly two years to become familiar with the facts, but the court recognizes that Defendants have not had an opportunity to submit requests for admission after the Second Amended Complaint was filed in January 2020.  In the alternative, Plaintiff requested that an extension of no more than three additional weeks be granted.  Mar. Status Conf. at 1:43:47–44:03.

USCIT Rule 16(b)(4) states that a schedule may be modified only for good cause and with the court's consent.  USCIT R. 16(b)(4).  This case has been pending before the court since 2017, with the alleged fraudulent activity taking place between 2007 and 2011, beginning more than fourteen years ago.  The court is committed to expediting this matter as quickly as possible to reach a resolution.

The court will provide the Parties with an opportunity to produce additional documents, depose fact and expert witnesses, and submit requests for admission, but will not delay the schedule by an additional five months as requested by Defendants.  The court will grant an extension of approximately two and a half months for additional discovery.  USCIT Rule 36(a)(3) provides broad discretion to the court to manage its docket and issue scheduling orders accordingly.  See USCIT R. 36(a)(3); see also Murata Mach. USA v. Daifuku Co., 830 F.3d 1357, 1362 (Fed. Cir. 2016) ("The Supreme Court has long recognized that district courts

have broad discretion to manage their dockets . . . ."); Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008) (recognizing the broad discretion given to district courts to manage their dockets). The Motion to Amend Scheduling Order is granted in part.

Upon consideration of the Motion for Protective Order, Motion to Compel, and Motion to Amend Scheduling Order, all other papers and proceedings in this action, and pursuant to USCIT Rules 16, 26, and 36, it is hereby

**ORDERED** that Defendants' Motion for Protective Order is granted; and it is further

**ORDERED** that Defendants' Motion to Compel is granted in part and denied in part; and it is further

**ORDERED** that Plaintiff shall produce legible versions of the "native format" documents to Defendants on or before April 2, 2021; and it is further

**ORDERED** that Defendants shall produce any additional documents to Plaintiff on or before April 2, 2021; and it is further

**ORDERED** that Defendants' Motion to Amend Scheduling Order is granted in part, and it is further

**ORDERED** that Scheduling Order, Sept. 28, 2020, ECF No. 142, is superseded by this order; and it is further

**ORDERED** that this case will proceed according to the following schedule:

1. Discovery shall be completed on or before June 18, 2021;

    a. Any remaining documents shall be produced on or before April 2, 2021;

    b. Depositions of fact witnesses shall occur remotely via videoconference and shall be completed on or before April 23, 2021;

    c. Designation of experts, exchange of expert reports, and remote depositions of expert witnesses via videoconference shall be completed on or before May 21, 2021;

    d. Any requests for admission shall be served on opposing counsel on or before June 4, 2021;

    e. Responses to any requests for admission shall be served on opposing counsel on or before June 18, 2021;

2. Dispositive motions, if any, shall be filed on or before August 6, 2021; and

3. Briefs in response to dispositive motions shall be filed on or before August 20, 2021, and a brief in response to a dispositive motion may include a dispositive cross-motion;

4. Reply briefs and briefs in response to a dispositive cross-motion shall be filed on or before August 27, 2021; and

5.      If no dispositive motions are filed, a request for trial, if any, accompanied by a proposed order governing preparation for trial, shall be filed on or before August 6, 2021.

No further extensions regarding discovery will be granted unless there is a need to address unexpected conflicts. The Parties should seek to limit such extension requests for unexpected conflicts to short periods of time.

                                                  /s/ Jennifer Choe-Groves
                                                  Jennifer Choe-Groves, Judge

Dated: March 30, 2021
        New York, New York