IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Court No. 17-00031 |
| PARAMBIR SINGH "SONNY" AULAKH, and | ) | |
| | ) | |
| GREENLIGHT ORGANIC, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Pursuant to Rule 36 of the Rules of the United States Court of International Trade (USCIT R.), plaintiff, the United States, respectfully requests that the Court deny the motion to compel filed by defendants, PARAMBIR SINGH "SONNY" AULAKH (AULAKH) and GREENLIGHT ORGANIC, INC. (GREENLIGHT).

The Government responded to defendants' requests for admission (RFA) in the manner prescribed by Rule 36 – with admissions and denials.  Defendants are unhappy the Government did not give the answers they wanted – it did not "admit" to statements with which it disagreed. This is because many of defendants' requests for admission asked the Government to accede to statements that were incorrect, misleading, or out of context.  The Government denied these requests, explained its objections, and made admissions where appropriate.

Rule 36 invites parties to narrow issues for trial by stating simple facts that the opposing party may admit or deny without explanation or qualification.  Defendants' requests for admission did not meet this standard.  Virtually all of their requests involved (1) parsing an excerpt from a document out of context; (2) misleading or ambiguous terms; and/or (3) requests for admission that the Government cannot answer because AULAKH destroyed or spoliated the records that underlie the request for admission.  The Government *must* dispute or deny purported facts where to do otherwise would mislead the jury or the Court, and that is what it did here.

I.       **RULE 36 AND REQUESTS FOR ADMISSION**

USCIT R. 36, provides, in relevant part, that "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."   The rule instructs that, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." The rule directs a denial to "fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  *Id.*  Importantly, an "answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  *Id.*

A.       **Purpose of Rule 36 and the Import of Admissions**

Rule 36 is not intended to be a discovery tool; rather, it is a prudential device designed to "narrow the issues for trial to those which are genuinely contested."  *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 967 (3d Cir. 1988); *Harris v. Koenig*, 271 F.R.D. 356, 372 (D.D.C. 2010) (noting purpose "is to narrow the scope of issues to be litigated and to thereby expedite the litigation process.").

Accordingly, requests for admission are used surgically, to "establish the admission of facts about which there is no real dispute."  *Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States*, 94 Fed. Cl. 413, 416 (2010); *United States v. Watchmakers of Switzerland Information Center*, 25 F.R.D. 197, 200 (S.D.N.Y. 1959).  Specificity and detail are, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification.  *Johnstone v. Cronlund*, 25 F.R.D. 42, 45 (E.D.Pa.1960). "'[T]he facts should be stated singly, so that the party called upon to make answers need not write an essay in reply.'" *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn.1988) (quoting 4A J. Moore, Federal Practice, ¶ 36.05(2) at 51 (1987)).

To this end, the request for admission,

> should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification.  A request for admission . . . should be such that it could be answered yes, no, the answered [sic] does not know, or very simple direct explanation be given as to why he cannot answer, such as in the case of privilege[.]  Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation.

*Levito v. Hussman Food Service Co., Victory Refrigeration Div.*, 1991 WL 21608, at *1–2 (E.D. Pa. 1991) (quoting *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir. 1988)).

Precision is required both in the construction of requests for admission and in the answer because, "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  USCIT R. 36(b).  Since "Rule 36 admissions . . . are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record."  *Amergen Energy Co.*, 94 Fed. Cl. at 420; *Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) (Rule 36 admission is treated as a judicial admission.).

### B.    Responses to Misleading, Ambiguous or Poorly Constructed Requests

Where precision is lacking, the party responding to misleading or problematic requests for admission has a duty to qualify its responses.  *E.g.*, *Flanders v. Claydon*, 115 F.R.D. 70, 71–72 (D. Mass. 1987).  "Generally, qualification is permitted if the statement, although containing some truth, 'standing alone out of context of the whole truth . . . convey[s] unwarranted and unfair inferences.'"  *Diederich v. Department of Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990) (internal citations omitted).  Courts have long recognized that, "[r]equests which are phrased so as to infer unfairly a particular or varied conclusion from the fact admitted are objectionable.  Likewise, requests which are half truths are objectionable if such half truths would infer a conclusion different from the whole truth."  *Johnstone v. Cronlund,* 25 F.R.D. 42, 45 (E.D. Pa. 1960).

C.      **Responses Where Information Is Lacking**

As the Government explained in many of its responses, it does not possess information needed to answer defendants' requests for admission because AULAKH and GREENLIGHT agents destroyed or spoliated GREENLIGHT records.  A party is not required to admit a request for admission where it does not possess adequate information to respond to a request.  *See Neogenix Oncology, Inc. v. Gordon*, 2017 WL 4233028, at *6 (E.D.N.Y., 2017);

D.      **Requests for Admissions Relating to Documents**

Many of defendants' requests for admission involve defendants' reference to, or the extraction of select quotations from, documents produced in discovery.  On one hand, Rule 36 is the ideal tool for disposing of undisputed issues relating to documents and records.  The rule expressly provides for the use of requests for admission to authenticate documents.  USCIT R. 36(a)(1)(B); Fed. R. Evid. 901.  Indeed, the use of Rule 36 for this purpose is paradigmatic, given that it is simple to admit whether or not a document is genuine.

But defendants did not use any requests for admission for authentication purposes.  Rather, they sought to have the Government "admit," without context, defendants' mischaracterizations of the contents of certain documents.  The Government did not admit these requests because to have done so would have been inaccurate and misleading.

By way of illustration, defendants' RFA 75 states:  "Admit that on June 29, 2011, ICE Special Agent Sean Lafaurie informed Leslie Jordan that he would be the agent reviewing the information provided on or about May 31, 2011 alleging fraudulent customs undervaluation and fraudulent consumer product misstatements by Greenlight."  The Government could not admit this request because defendants (1) selectively referenced parts of this document, without reference to other documents for the context of Ms. Jordan's and Agent Lafaurie's statements, and (2) used a quasi-legal phrase, "fraudulent customs undervaluation," that appears neither in Agent Lafaurie's e-mail nor in the original e-mail by Ms. Jordan.  *Id.,* Ex. B at 76.  Indeed, Agent Lafaurie stated only that he "will be the agent reviewing the information to determine if a criminal investigation is warranted."  *Id.*, Ex. B. at 96.

The end game behind defendants' misappropriation of this document is now apparent: their requests for admission mischaracterize these exchanges so that they may argue that the Government discovered fraud at GREENLIGHT earlier than Government witnesses testified they discovered fraud.  In defendants' motion to compel, they argue that e-mail exchanges between Government witnesses and Ms. Jordan show the Government knew about a "possibility of fraud" at an earlier date.  *Id.* at 15.  Defendants then use statements of two individuals – one of whom is an employee of defendants' law firm, and neither of whom had any involvement with this matter – to argue this document means that the Government "was sufficiently on notice as to the possibility of fraud to discover its existence with the exercise of due diligence."  Def. Mot. at 14.  Further, defendants argue, "there is no escaping the fact that the commencement of a formal investigation met the date of discovery test."  *Id.* at 15.

Defendants' use of an RFA for this purpose, on an issue of fact where the parties so plainly disagree, betrays the purpose of Rule 36:  Defendants are well aware that there is a *significant disagreement of fact* about the date the Government discovered the fraud at GREENLIGHT.  Government employees who *actually* investigated GREENLIGHT testified under oath at deposition that they did not discover fraud at GREENLIGHT until after February 9, 2012, when AULAKH and GREENLIGHT turned over evidence showing that they had created false invoices.  Obviously, the date the Government discovered fraud at GREENLIGHT is a fact in dispute to be resolved at trial, and the Government denied defendants' misleading request.  Moreover, defendants' requests for admission use the word "fraudulent" without context or definition, and invites potential misinterpretation of the Government's answer.

This risk of misinterpretation is heightened because defendants invoke an incorrect legal standard:  contrary to their claim, the statute of limitations does not begin to run at the discovery of a "possibility of fraud."  Rather, a complaint must be filed, "within 5 years after the date of discovery of fraud."  *Cf*, 19 U.S.C. § 1621(1).  The United States denied these requests for admission because to admit them, laden with an ambiguous legal term, would be misleading.

These defects run throughout defendants' requests:  they mischaracterize documents, engage in the use of loaded legal words such as "fraud," and "fraudulent," and now argue that, no matter how perfunctory, misleading or fraught with legal ambiguity their requests were, the Government should have admitted them.  Defendants' use of requests for admission to seek to circumvent a trial on such material factual disputes is inappropriate.

Courts have warned that the use of Rule 36 to seek one party's "interpretation" of complex documents is "fraught with peril."  *See Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 81 (N.D.N.Y. 2003).  As one district court explained, the use of requests for admission to characterize statements within a document betrays the purpose of Rule 36, because "a document has both context, the writer's intent, and other subjective variables, which cannot be legitimately reduced to matters of fact, of mixed fact and law, or of opinion."  *Lakehead Pipe Line Co. v. American Home Assur. Co.*, 177 F.R.D. 454, 457–58 (D. Minn. 1997).  "The more complicated the document, the stronger the objection to such an inquiry because the complexity obscures the Rule 36 intent to have simple and definitive answers."  *Henry*, 212 F.R.D. at 80.

Accordingly, courts have acknowledged the propriety of denying requests for admission based upon statements within documents that are misleading or out of context.  "Defendants sufficiently denied this characterization of the content of the email, which was essentially stripped of its surrounding context.  In sum, Defendants' response to Request No. 39 was sufficient."  *McCarthy v. Darman*, 2008 WL 2468694, at *3 (E.D. Pa. 2008).  The United States was entitled to disagree with defendants' interpretation of the documents cited in these requests for admission, and where appropriate denied these requests for admission.  Indeed, as another district court confronted with a similar argument observed, this response was appropriate:

> Notably, the Plaintiffs' responses to these Requests included an admission, or a denial, so that the Defendants were not deprived of a competent response to their Request.  Specifically, by the Plaintiffs' Response, the Defendants are on notice that their interpretation of a given document is inconsistent with the Plaintiffs' construction and, if the document is critical to the case, the evidence that would be required to prove the document's

> meaning.  The quintessential function of Requests for Admissions is to allow for the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, *to provide notification as to those facts, or opinions, that remain in dispute.* This function has been faithfully served by the Plaintiffs' responses.

*Lakehead Pipe Line Co.*, 177 F.R.D. at 457–58 (emphasis supplied).

The Government in this case served Rule 36's "quintessential function" by advising defendants that their interpretations of these documents "remain in dispute."  *Id; see Clubcom, Inc. v. Captive Media, Inc.*, 2009 WL 454919, at *4 (W.D. Pa. 2009) (""If ClubCom believes that the License Agreement does not say or contemplate what Captive Media asks it to admit it does, or is otherwise "taken out of context," it may deny the Requests for Admission.").  Indeed, as the Advisory Committee to Rule 36 observed, "[t]he very purpose of the [Rule 36] request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial."  Advisory Committee Notes, 1970 Amendment to Fed. R. Civ. P. 36; *see JZ Buckingham Investments LLC v. United States*, 77 Fed. Cl. 37, 46 (2007) ("if the parties cannot agree on a matter, then they should await the opportunity to present evidence at trial.").  Contrary to defendants' suggestion, the Government cannot be "compelled" to give the response they seek because defendants are unhappy with the answer given.  *See*, *e.g.*, *Annabel v. Heyns*, 2014 WL 1207802, *1 (E.D. Mich. Mar. 24, 2014) ("The purpose of a motion to compel discovery is not to challenge the truthfulness of the response but rather to compel a party to answer the interrogatory.").

## II.  DEFENDANTS' REQUESTS FOR ADMISSION

Defendants submitted 116 requests for admission, and the Government supplied 116 responses, admitting or denying all of them.  With a few exceptions, defendants' motion to compel does not discuss specific supposed shortcomings of the Government's responses, but rather presents criticisms in broad, categorical strokes.  Because defendants largely avoid discussing specific responses, the Government responds below to defendants' arguments in kind.

A.      **Requests and Responses**

Defendants' 116 requests for admission may be divided into three categories:  Requests 1 through 33 related to specific entries, or groups of entries, made by GREENLIGHT.  Requests 34 through 68 related to either the desiderata underlying GREENLIGHT's loss of revenue and penalty quanta, or GREENLIGHT's internal accounting or record-keeping procedures.  Requests 69 through 116 related to defendants' characterizations of partial excerpts of documents pertaining to the Government's investigation of GREENLIGHT.  A small number of defendants' requests for admission were indecipherable.[1]  Defendants' requests for admission and the Government's corresponding answers are attached as Exhibit 1.

In its response to each request for admission, the Government (1) made admissions where appropriate, (2) denied requests where it disagreed with defendants' characterization of facts, (3) objected to vague or ambiguous language, and, where appropriate, (4) explained it could not respond because AULAKH and GREENLIGHT destroyed or spoliated records which would allow an accurate response.  USCIT Rule  36(a)(4) instructs that, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  For each answer, the United States met its obligations under the rule.

Defendants lodge three criticisms of the Government's responses.  First, they argue that requests 1 through 33 "should have been admitted" because they dispute the Government's reading of certain entry records.  Def. Mot. at 6.  Second, they argue that the Government should have admitted requests for admission that the Government denied, in part, because they were poorly worded or ambiguous.  *Id.* at 11.  Third, defendants argue that, the Government "must" admit "facts" referenced in Requests for Admission 69 through 116, because, defendants claim, they were "stated in its own documents."  Def. Mot. at 13.

---

1 *See*, *e.g.*, RFA 6 ("Admit that Exhibit 2 to the second amended complaint (Court Doc 124) lists Rajlakshmi entry WLQ-1101356-2 as one of the entries for which CBP has provided fraudulent double invoicing undervaluation details has occurred."); RFA 90 ("Admit that ICE's request for audit advised CBP that the ICE investigation was a criminal/civil investigation into Greenlight's undervaluation and misclassification (citation)").

**B.     The Government's Answers to Requests For Admission 1 Through 33 Were Appropriate**

Requests for admission 1 through 33 relate to certain entries made by GREENLIGHT, and defendants' efforts to suggest that no fraud was associated with these entries.  Mot. at 8.  Defendants selected certain documents associated with these entries and, looking at these documents in isolation, argued that "are not covered by allegations of misclassification and/or undervaluation in the complaint."  *Id.*  The Government disagreed with defendants' characterization of these records, and denied them.

Two undisputed facts bear generally upon the United States' answers to these requests for admission.  First, it is undisputed that AULAKH destroyed, spoliated and/or refused to turn over many of GREENLIGHT's internal records.  These include e-mail between GREENLIGHT and its brokers that AULAKH refused to disclose in response to the Government's discovery requests.  The absence of these GREENLIGHT e-mail records is significant:  defendants have cast blame upon the brokers in this case, and yet have destroyed or spoliated company e-mail communications with its brokers.  Thus, the Government was unable to ascertain whether many requested admissions relating to specific entries were true or not, because it did not have access to GREENLIGHT records which would allow it to draw such conclusions.  For example, RFA 2 asks the Government to admit that certain entries "were classified as knit garments under Chapter 61 of the HTSUS."  The Government explained that it could not "admit" that purported fact because defendants did not turn over records showing how GREENLIGHT classified these garments, "internally or otherwise."  Essentially, defendants' sole focus upon select entry packages neglects the other internal documents and e-mail that they did not disclose, which would reveal how, in fact, GREENLIGHT internally accounted for those entries.

Furthermore, AULAKH's destruction or spoliation of these e-mail is itself evidence of AULAKH and GREENLIGHT's liability.  *See*, *e.g.*, *Nation-Wide Check Corp. v. Forest Hills Distrib., Inc.*, 692 F.2d 214, 218 (1sst Cir. 1982).  Thus, the Government disagreed with defendants' stated objective to claim that there were entries "not covered by the allegations of

misclassification and/or undervaluation in the complaint." Mot. at 8. Not only did it not possess

certain evidence which would allow it to answer this request accurately, but defendants'

destruction/spoliation of crucial evidence strongly infers the contrary.

The second undisputed fact is that the fraud effected by AULAKH and GREENLIGHT

agents was multifaceted and systemic. Evidence adduced at trial will show that:

- AULAKH, GREENLIGHT and co-conspirators submitted false documentation to the Government about the value of the athletic apparel they entered into the United States;

- AULAKH, through GREENLIGHT, directed the creation of falsified invoices to conceal the fraud;

- AULAKH and GREENLIGHT concealed the costs of fabric they purchased that was used in the manufacture of their athletic apparel, thus understating the value of that apparel;

- AULAKH, GREENLIGHT and their co-conspirators misclassified athletic apparel as woven to avoid paying the higher duty rate associated with knit apparel;

- AULAKH, GREENLIGHT and their co-conspirators falsely claimed that their apparel was made from recycled polyester; and,

- AULAKH made misrepresentations about GREENLIGHT's ability to pay the duties owed, and siphoned money away from GREENLIGHT to avoid paying the duties and penalties owed in this case.

This multifaceted nature of fraud at GREENLIGHT is relevant here because some of

defendants' requests for admission, including RFA 1 through 33, seek an admission that certain

of GREENLIGHT's entries were not fraudulently entered. But the evidence shows this is not

true. For example, evidence at trial will show that AULAKH falsely claimed that

GREENLIGHT's imported athletic shirts were made of recycled polyester. These false

representations were not identified in the calculations underlying GREENLIGHT's loss of

revenue or penalty, but they are relevant to showing AULAKH's intent, knowledge and plan

with respect to the entries identified in the penalty. Thus, in response to defendants' requests for

admission, the United States could not "admit" that fraud was not associated with certain entries

because, in addition to not having access to GREENLIGHT records, other evidence showed that it was not true.  Evidence will show that the fraud at GREENLIGHT was systemic.

Defendants apparently hope that the evidence of systemic fraud at GREENLIGHT will be concealed from the jury.  But this matter will be tried *de novo*:  the Government will present evidence of fraud uncovered by the Government before the penalty was issued, and will present additional evidence of fraud at GREENLIGHT that is relevant to the conduct encompassed in the penalty.  So, for example, evidence will show that AULAKH concealed the fact that he purchased fabric material used to construct GREENLIGHT apparel, thus understating the value of GREENLIGHT imports and the amount of duties owed on those imports.  The evidence will show that AULAKH falsely claimed that GREENLIGHT shirts were made of recycled polyester. These *evidentia* and others are relevant because they show, among other things, the knowledge, common plan, and intent of AULAKH and his co-conspirators to carry out the fraud scheme.

## C.  The Government Properly Denied Defendants' Requests for Admission that Used Loaded, Ambiguous, or Unclear Terminology

A significant number of defendants' requests for admission used terminology that was vague, ambiguous, or undefined.  Defendants made no effort, whatsoever, to define or select which meaning of these ambiguous terms they intended to use.  Yet defendants now attempt to shift blame to the United States for their failure to explain what they meant.

It bears repeating that the party responding to misleading or problematic requests for admission must qualify its responses, *Flanders*, 115 F.R.D. at 71–72, to avoid "unwarranted and unfair inferences."  *Diederich*, 132 F.R.D. at 619.  "Requests which are phrased so as to infer unfairly a particular or varied conclusion from the fact admitted are objectionable."  *Johnstone*, 25 F.R.D. at 45.  A party *must* object, or qualify responses to, and deny, poorly crafted requests for admission, because "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  USCIT R. 36(b).  *Matter of Corland Corp.*, 967 F.2d at 1074.

Defendants do not excuse their failure to use more accurate terms; rather, they offer assurances, *ipse dixit*, that the terms used had "clear meaning," or were "commonly used," or a "common financial term." Mot. at 12. But in fact, many of the terms used by defendants in their requests for admission carried at least two potential interpretations, or none at all.

For example, defendants used the term, "the cost of goods sold" without defining it. Defendants' bare declaration that it is a "common financial term," *id.*, does not cure their failure to define how they used it. In fact, the "cost of goods sold" will vary depending upon the accounting method used – "FIFO," LIFO," the "Weighted Average Cost Method," or the Special Identification Method. *See*, *e.g.*, http:Investopedia.com/terms/c/cogs.asp ("the value of the cost of goods sold depends on the inventory costing method adopted by a company."). Thus, in RFA 35, where defendants requested an admission that, "Greenlight's Cost of Goods Sold stated in its tax returns included Greenlight's payments for customs duties and freight charges," the Government's response was twofold: it objected because defendants did not define the term, but then acknowledged that the most accurate answer to that question – whatever the definition – would be found in the Government's audit workpapers and discussions in depositions. The Government could not admit the ambiguous statement, but directed defendants to the closest answer and otherwise denied it.

Similarly, defendants complain because the Government would not accede to their vague and undefined used of terms such as "freight charges," "international freight charges," and "international freight deductions." Mot. at 12. But these terms carry great weight in this case – indeed, AULAKH and GREENLIGHT have sought to explain their creation of false invoices by claiming that one set of invoices includes shipping or "freight" charges, and one does not. However dubious that explanation may be, the Government cannot agree to undefined terms used in requests for admission that may mislead the jury about these purported costs. So, for example, in RFA 37, defendants wanted the Government to, "[a]dmit that Greenlight's payments for customs duties and freight charges were not separately identified on Greenlight's tax returns." Although this evidently goes to a contested issue – *i.e.*, the amount of loss of revenue

12

associated with GREENLIGHT entries – defendants identified neither the years of the tax returns to which they referred nor what they referred to by the term "freight charges." Further, the Government could not answer the question as posed because it did not have years of GREENLIGHT tax returns in its possession. Accordingly, it denied the request.

Defendants also argue that "covered goods" was not ambiguous, but here misunderstand the nature of the Government's objection. Mot. at 15. Defendants sought admission that certain goods were associated with certain manufacturers. For example, in RFA 14, defendants wanted the Government to admit that entry number BDQ-3058621-0 covered goods purchased by GREENLIGHT from Talent Creation Ltd. in China (Talent Creation). Yet, as the Government explained in its answer, defendants had not turned over internal GREENLIGHT communications, such as e-mail, with Talent Creation that would allow the Government to "admit" or "deny" this fact, or identify what goods actually fell within the scope of this entry. It is defendants who did not turn over documents and internal company records to the Government in this case. But more importantly, the Government's denial of this request for admission for this reason illustrate why this question must be resolved at trial: Defendants may present evidence alluding to the entry number BDQ-3058621-0, and may argue that this reflects a purchase from Talent Creation, and that, for example, there is no fraud associated with it. The Government may contest that statement by presenting evidence of GREENLIGHT's systemic fraud.

Finally, defendants complain that the Government objected to terms including "fraudulent undervaluation," and similar phrases using derivations of the word, "fraud." This root word "fraud" runs throughout defendants' requests for admission. Unfortunately, defendants lodge broad criticisms rather than pointing out how specific answers are deficient. The Government's responses to these requests for admission were tailored to each request, and were different, depending upon the request, thus precluding a corresponding, broad-stroke explanation. Put simply, the United States could not, and will not, admit to any request predicated upon defendants' misapplication or misuse of such a loaded word, which plainly

reflects a conclusion of law, because such an answer would mislead the jury, would not be true, and would betray the purpose of Rule 36.

Otherwise, some of defendants' uses of these loaded words illustrate how offering unqualified admissions would invite peril. For example, in defendants' apparent effort to claim that certain GREENLIGHT entries were unassociated with fraud, RFA 4 offers that: "Admit that CBP has no fraud claim against Greenlight that the Rajlakshmi goods should have been entered as knit goods." This request is infected with multiple issues: defendants do not define "fraud claim" – a term that carries potentially both lay and legal definitions, and a term that is used differently by the parties in this case. Further, GREENLIGHT and AULAKH's destruction or spoliation of GREENLIGHT records resulted in the Government not having e-mail and internal GREENLIGHT communications that would allow it to conclude whether "the Rajlakshmi goods should have been entered as knit goods." The Government denied the request for admission because it was misleading. As explained above, evidence at trial will show that fraud at GREENLIGHT was systemic. It was appropriate to deny this request.

### D.     The Government Properly Denied Requests for Admission Where Defendants Mischaracterized Documents

The Government earlier detailed defendants' mischaracterization of documents in their requests for admission. Requests 69 through 116 were directed towards defendants' attempt to revive their argument that this matter was time-barred by the five year statute of limitations, section 1621 of Title 19. Defendants here repeat their argument – already made three times to and rejected by the Court, *see* Rec. Doc. 87, 94, 96, 120, 128 – that the fraud at GREENLIGHT was discovered by the Government before February 2012. This is demonstrably false: all of the discovery, and all of the deposed witnesses involved with the investigation of GREENLIGHT in 2011 and 2012, demonstrated and testified that evidence that defendants were intentionally submitting false statements (*i.e.*, the misstatements were a result of *fraud*, rather than negligence or gross negligence) was first discovered *after* February 9, 2012, when the Government received evidence that GREENLIGHT agents had created false invoices relating to its entries.

14

Thus, the parties dispute the date fraud was discovered.  Yet, defendants now seek to use Rule 36 requests for admission as a discovery cudgel to establish their version of the facts.  This contravenes the purpose of the rule.  *Cf. Amergen Energy Co.*, 94 Fed. Cl. at 416 (Rule 36 is used to "establish the admission of facts about which there is no real dispute.").

Defendants do not introduce any new evidence to aid their old argument about the Government's discovery of fraud at GREENLIGHT; rather, they recast their old argument by extracting statements from old evidence and mischaracterizing them in Rule 36 requests for admission.  But defendants seek to create the *impression* that they have discovered new evidence and are not simply repeating arguments and evidence that the Court already rejected.

To this end, defendants contend that they have now discovered documents relating to "the documentation of section 1592 violations," by looking on the "*internet*" – as if the internet had heretofore been unavailable to them.  Mot. at 14.  Earlier in this litigation, defendants' counsel had suggested that the Government had in its possession a step-by-step manual on how to perform trade fraud investigations.  Defendants sought to use this purported manual to mount a collateral attack on the Government's investigation of GREENLIGHT.  Government counsel pointed out that he was aware of no such step-by-step manual, and that any manual discussing law enforcement investigative techniques and practices would be subject to a law enforcement privilege.  Further, counsel explained that such collateral attacks on Government investigations are normally barred from evidence by Rules 401 and 403.

Now defendants claim to have discovered such instructions on the internet, and suggest that these publications altered the date of discovery of fraud at GREENLIGHT.  Mot. at 14-16.  This is flatly untrue: *not one* of the publications now identified by counsel is such an instructive manual.  Rather, these publications are general policy manuals, akin to the U.S. Attorneys Manual, broadly outlining applicable laws, legal standards, roles of agencies, and conceptual guidance on internal agency tools and policies.  In no respect do *any* of these referenced documents supply directions on discrete investigative steps taken in an individual trade fraud investigation.  And nowhere do *any* of these publications, as defendants claim, "confirm the fact

15

that the statute of limitations begins to run . . . on the date which the CBP and/or ICE receive information that put the agency sufficiently on notice as to the possibility of fraud."  *Id.*  In fact, only one of these publications even references the statute of limitations, and there correctly cites to the standard articulated in section 1621 of Title 19 – *i.e.*, that "actions must be commenced within 5 years of the date of discovery of the fraud."  Commercial Trade Fraud Investigations Handbook at 61.  Defendants' claims that these documents discuss a legal standard rooted in "discovery of the possibility of fraud," Mot. at 14, has no basis in fact.[2]

Although ill-conceived, this diversion explains defendants' use of RFA 69 through 116: they seek to extract quotations from documents exchanged in the course of the Government's investigation of GREENLIGHT to argue that the statute of limitations should have begun to run when Government personnel learned of "possible fraud," or "opened a criminal case," or informed GREENLIGHT and AULAKH that they had opened formal investigations of Greenlight.  Mot. at 16.  None of the excerpted texts from these documents, or mischaracterizations of these documents, alter the fact that the Government did not discover evidence of fraud at GREENLIGHT until February 2012.

Although defendants may present arguments about these disputed facts and their characterizations of the meaning of these documents to the jury, Rule 36 is not a proper medium for their explication.  "[A] document has both context, the writer's intent, and other subjective variables, which cannot be legitimately reduced to matters of fact, of mixed fact and law, or of opinion."  *Lakehead Pipe Line Co.*, 177 F.R.D. at 457–58.  Courts have frowned upon the use of admissions to parse quotations out of context, or mischaracterize documents.  *McCarthy*, 2008 WL 2468694, at *3 (noting a party sufficiently denied a characterization of an e-mail, "stripped

---

2 Equally as far-flung is defendants' reference to two persons hired by defendants' law firm to testify to their understanding of section 1621 of Title 19 – *i.e.*, that the Government discovered "the possibility of fraud" at some date before February 2012.  Mot. at 14.  These individuals had no personal knowledge of the events underlying this matter, and their opinions interpreting the statute, and opining when fraud was discovered, would not be admissible.  Indeed, their opinions only confirm that material disputes exists as to the proper interpretation of these documents, and that Rule 36 is not an appropriate means by which to establish an interpretation.

of its surrounding context.").  Here, by the Government's denial of their mischaracterization of documents, "the Defendants are on notice that their interpretation of a given document is inconsistent with the Plaintiffs' construction and, if the document is critical to the case, the evidence that would be required to prove the document's meaning."  *Lakehead Pipe Line Co.*, 177 F.R.D. at 457–58.

Defendants claim that the Government's answers to defendants' requests, "denied the content of any such communication even when it was explicitly set forth in the Government's documents."  Mot. at 15-16.  The Government did no such thing:  instead, where plaintiff mischaracterized documents, the Government denied the request, explaining that, "this request for admission misstates or mischaracterizes the contents of the document cited, and does not properly reflect the context of the document in relation to other contemporaneous documents." *See*, *e.g.*, RFA 69, 70, 71.  Where defendants' characterization in a request for admission was in part misleading, and in part true, the Government made both denials and admissions.  *See* RFA 73 (while noting that the request mischaracterized the content of the document cited, "admit[ted] that [the Government] received an investigative lead relating to GREENLIGHT in or around June 2011."); *see also*, *e.g.*, RFA 77, 82, 83, 84, 85, 91, 95, 101, 104, 105.  Where defendants fairly characterized a fact memorialized in the document, the Government admitted it.  *E.g.*, RFA 76  ("The Government admits that on or about June 30, 2011, HSI Special Agent Sean Lafaurie spoke with Leslie Jordan by telephone relating to allegations relating to GREENLIGHT."); *see also* RFA 105, 106.

In sum, he Government in this case served Rule 36's "quintessential function" by admitting requests for admission where it could do so without misleading the jury, and by denying requests for admission and informing defendants that their characterizations of these documents "remain in dispute." *Lakehead Pipe Line Co.*, 177 F.R.D. at 458.

## III.    CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court deny defendants' motion to compel.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. MCCARTHY
Assistant Director

*s/ William Kanellis*
WILLIAM KANELLIS
ASHLEY AKERS
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 532-5749

August 17, 2021                          Attorneys for Plaintiff