## UNITED STATES COURT OF INTERNATIONAL TRADE

UNITED STATES,

Plaintiff,

v.

GREENLIGHT ORGANIC, INC.,

and

PARAMBIR SINGH "SONNY" AULAKH

Defendants.

Before: Jennifer Choe-Groves, Judge

Court No. 17-00031

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Defendants*
599 Lexington Avenue, FL 36
New York, New York 10022
Tel. (212) 557-4000

Dated:  September 27, 2021
        New York, New York

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.   INTRODUCTION ........................................................................................... 1

  A. Summary of Defendants' Position............................................................ 1

  B. Material Facts Not in Issue ....................................................................... 1

II.  THE PLAIN MEANING OF THE WORDS OF SECTION 1621 WITH RESPECT TO
     FRAUD INVOKES THE DISCOVERY RULE ................................................... 7

III. THE COURT'S REQUESTS FOR ADDITIONAL INFORMATION HAVE BEEN
     ANSWERED, CONFIRMING THAT FRAUD WAS DISCOVERED IN 2011.............. 9

IV.  THE LAW IS CLEAR THAT GREENLIGHT'S ALLEGED FRAUD IN
     UNDERVALUATION AND MISCLASSIFICATION WAS DISCOVERED IN 2011. 11

V.   CONCLUSION ............................................................................................. 17

CERTIFICATE OF COMPLIANCE............................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456 (1924) ................................... 14

*Harman v. Pollock*, 586 F.3d 1254 (10th Cir. 2009)................................................. 16

*Merck & Co, Inc. v. Reynolds*, 559 U.S. 633 (2010) .................................................. 8

*U.S. v. F.A.G. Bearings Corp.*, 615 F. Supp. 562 (Ct. Int'l Trade 1984)...................... 7

*United States v. $116,000 in United States Currency*, 721 F. Supp. 701 (D.N.J. 1989) ............... 14

*United States v. Cortez*, 449 U.S. 411 (1981)...................................................... 16

*United States v. Greenlight Organics, Inc*., Slip Op. 18-165 (Nov. 29, 2018)........................ 8, 10

*United States v. Modes, Inc*., 16 CIT 879 (1992) ................................................... 7

*United States v. Neman*, 16 CIT 97 (1992) .......................................................... 9

*United States v. R.I.T.A. Organics, Inc*., 487 F.Supp. 75 (N.D. Ill. 1980) ........................... 9

*United States v. Shabahang Persian Carpets, Ltd*., 926 F. Supp. 123 (E.D. Wis. 1996)......... 15, 16

*United States v. Spanish Foods, Inc*., 24 CIT 1052 (2000) ....................................... 7, 9

*United States v. Spanish Foods, Inc*., 25 C.I.T. 108 (2001) ..................................... 12, 13

*United States v. Thorson Chemical Corp*., 16 CIT 441 (1992) ...................................... 9

*United States v. Ziegler Bolt & Parts Co*., 19 CIT 13 (1995) .................................... 7, 9

**Statutes**

18 USC § 542 ...................................................................................... 6, 7, 10

19 U.S.C. § 1592................................................................................ 1, 6, 7, 13, 17

19 U.S.C. § 1595 .................................................................................. 14

19 U.S.C. § 1621................................................................................ 1, 7, 11, 13, 14

**Rules**

Rule 56.3 ......................................................................................... 3

**Other Authorities**

"Discovery," MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-
webster.com/dictionary/discovery (accessed 17 Sept. 2021)..................................... 8

146 Cong. Rec. H2051 (daily ed. April 11, 2000)............................................... 15

Fed. R. Ev. 702; Advisory Committee Notes, 1972 Proposed Rules. ........................... 17

## I.    INTRODUCTION

### A.    Summary of Defendants' Position

The general rule for gross negligence and negligence claims is that a section 1592 case must be commenced within the five-year section 1621 limitations period from the date of entry. The Greenlight entries which the Government asserts are included in this case were filed during the period 2008-2011, which means that the 2008 entries would have been outside the "date of entry" limitations period beginning five years from the date of entry in 2013, and the 2009 entries would have been untimely beginning five years from the date of entry in 2014, and so on.

The limitations period under section 1621 begins to run on a section 1592 claim based on alleged fraud five years from the date the Government first identifies ("discovers") the fraud OR, under the "discovery rule," becomes aware of facts that the Government could use to identify the fraud ("with due diligence should have known").    The discovery of facts that would constitute the alleged fraud commences the running of the statute of limitations.    The discovery rule does not extend the time to file an action until after the Government confirms the facts needed to file litigation or quantify the loss of revenue.

### B.    Material Facts Not in Issue

In Plaintiff's Opposition to Defendants Motion for Summary Judgment ("Pl. Opposition"), the plaintiff did not oppose defendants' "Statement of Material Facts Not in Issue" pursuant to Rule 56.3 of the Rules of the U.S. Court of International Trade ("CIT") ("Def. Material Facts"). Accordingly, Def. Material Facts should be considered admitted.

Pl. Opposition does include statement of facts in the text which in some instances repeat Def. Material Facts.    Attached to Pl. Opposition are additional facts and assertions in the declarations of Sean Lafaurie (August 8, 2018), Thomas Soo Hoo (August 9, 2018), and Stephen

Hilsen (August 7, 2021).  The statements of fact in plaintiff's submissions do not create issues for

trial on the statute of limitations issue, and many of them are neither relevant to nor supportive of

the Government's position in this case.  For example, plaintiff explains in its Memorandum (page

6) and in the declarations of Agent Lafaurie and Mr. Hilsen that very few of the numerous

complaints received by CBP and ICE duty agents annually are turned into formal investigations.

This fact is not relevant to the instant case which did not originate from an E- allegation or an

anonymous tip.  The case arose as a result of detailed information provided by a credible source --

one of the few cases that moved forward as a criminal investigation.[1]

     The description of investigative steps in paragraphs 6-15 of the Lafaurie declaration and

paragraphs 4-12 of the Soo Hoo declaration demonstrate that ICE and CBP believed in 2011 that

there was a potential criminal fraud case to be brought against Greenlight.  CBP calculated

potential loss of revenue for one shipment based on the entry documentation.  ICE and CBP

thought that Greenlight's conduct was sufficiently egregious to justify a criminal proceeding

against the company under 18 USC 542 for both misclassification and undervaluation.  Both the

Lafaurie and Soo Hoo declarations describe the unannounced December visit to Greenlight during

which they informed the Gill and Aulakh of commencement of the investigations and audit and

served the summons for production of all import-related records within two (2) weeks.[2]

---

[1] The Government also makes negative implications regarding the formation of Reva Wear (Dkt 162-1, p. 5), even though the facts relating to the formation of Reva Wear had nothing to do with Greenlight's alleged violations.  *See* Aulakh deposition tr. 123:19-25; Gill deposition tr. 138:7-16; 140:8-142:23; 144:25-145:7.  No fraud here; only good business.

[2] The deadline was extended upon request.  "Greenlight did not provide any additional documents until the audit entrance conference on February 9, 2012.  During the meeting [on that date]… Gill stated that the documents provided were all original copies from brokers, and stated that the **brokers had not been sending her copies of Greenlight's entry documents until she specifically requested it from them, following the initial site visit [of December 19, 2011].** Dkt. 91-5 *SEALED* p. 2 ¶ 14. The auditors were made aware of this fact in December 2011 when Greenlight requested an extension of the January 3, 2012 summons deadline.

Significantly all of this activity took place in 2011.  The balance of the facts set out in the Government's documents relate to 2012 events that enabled ICE and CBP to confirm their earlier "discovery of fraud" and quantify the claimed loss of revenue.

Even if the Court should decide not to deem defendant's Rule 56.3 statement of facts admitted, it is clear based on the text of Government documents attached to Defendant's Memorandum in Support of Summary Judgment (Dkt. 157-1) and Pl. Opposition (Dkt. 162) with exhibits, that the parties agree on the following material facts:

1.     In **May 2011**, Leslie Jordan sent a detailed 11-page **complaint entitled "Devaluation of Imports for Duty Avoidance,"** to U.S. Immigration and Customs Enforcement ("ICE") in which she stated, "Greenlight requests that factories lower the value of goods on commercial invoices to pay lower duty, and then separately pays the balance to the factory or factory owner."  Dkt. 162-4 p. 2.  Ms. Jordan documented the alleged double invoicing scheme with a copy of her email correspondence with Greenlight suppliers One Step Ahead and Wuhan Bizarre[3] (.Dkt. 162-4 pp. 3-11), and with a detailed list of 2010 and 2011 Greenlight import shipments from those two suppliers. Dkt. 162-4 p. 12.

2.     In **June 2011**, ICE assigned Special Agent Lafaurie "**to determine if a criminal investigation is warranted** and serve as the contact person for Ms. Jordan."  Dkt. 157-1, p. 12;

---

Without any rational basis or proof for the allegation, plaintiff states, "[a]fter they learned that they were being investigated, AULAKH and GREENLIGHT agents destroyed, spoliated, or otherwise refused to turn over GREENLIGHT's business records, notwithstanding numerous investigative demands."  Pl. Opposition pp. 5-6.  No evidence of record destruction or spoliation after the December 2011 surprise visit to Greenlight was ever identified.   Defendants began to provide the Government with import records obtained from the customs broker only 39 days after the return date of the original summons.

[3] Collectively, One Step Ahead and Wuhan Bizarre imports account for 72.9% of all entries at issue in this litigation

Dkt. 162-19 p. 2.[4]  In telephone conversation, Agent Lafaurie told Ms. Jordan that he would be "reviewing the information in the complaint to determine if a criminal investigation is warranted." Based on the conversation and the materials supplied to ICE, he considered Ms. Jordan "credible." Dkt 162-19 p. 3.

3.    In **July 2011**, Agent Lafaurie requested assignment of an ICE agent in San Francisco to assist in the investigation. He also requested CBP assistance in the investigation. Dkt. 162-19 p. 3.  When notified that an additional Greenlight entry at Long Beach had been referred for examination, Lafaurie noted in an email to the CBP Senior Import Specialist, "As discussed, we were provided with **information indicating the value of the product is significantly reduced on the invoice."**  Dkt. 157-1 p. 13; Dkt 162-21 p. 1-2 (Declaration of Thomas Soo Hoo).

4.    In **August 2011**, Ms. Jordan sent to Lafaurie an email she had received from Wuhan Bizarre which provided **additional evidence of the undervaluation** of Greenlight entries of goods purchased from this vendor.  Dkt. 157-1 p. 13.  Agent Lafaurie coordinated his investigation with that being conducted by the FTC.  Dkt. 162-19 p. 4.

5.    In **September 2011**, Lafaurie submitted a "Request for Audit Assistance on Enforcement Activity" to CBP Office of Regulatory Audit."  Under the heading "Reason(s) Selected, the document states, "**The company is suspected of undervaluation and consumer fraud."**  Mr. Lafaurie also sent a "Collateral Request for Investigative Assistance" to the ICE attaché in Vietnam.  Dkt. 157-1 p. 14-15; Dkt 162-21 p. 2.

6    In **October 2011**, Customs advised Lafaurie that testing of two T-shirts from a Greenlight entry which was done at the request of ICE revealed the **garments were knit rather than woven (as declared upon entry), and which resulted in the underpayment of duty on**

---

[4] In June 2011 Ms. Jordan also filed a complaint with the FTC alleging that Greenlight was falsely advertising and mislabeling its imports.  Dkt 157-1 p. 11-12.

this entry.  **Shortly thereafter Lafaurie advised CBP officials that ICE had opened criminal case LA089CR121A0011 against Greenlight and the case covered both undervaluation and misclassification**.[5]  Dkt. 157-1 p. 15.  CBP Reg. Audit estimated potential loss of revenue to be $86,559 "assuming undervaluation based on Greenlight's weighted average price" for the period 1/01/1997-9/30/2011.  Dkt 91-5 *SEALED* p. 2 ¶ 8.

7.    **In November 2011, Agent Lafaurie notified CBP that ICE had opened a criminal case against Greenlight with respect to undervaluation and misclassification**, and advised the CBP auditors that ICE Special Agent Misty Miller of the San Francisco office was also assigned to the case.  Dkt. 157-1 p. 16-17. ICE agents met with CBP and identified 18 USC 542 as the statute under which they would like to charge Greenlight with misclassification and undervaluation violations.  **Agent Lafaurie discussed this investigation with the U.S. Attorney's Office ("USAO") to in an effort to have criminal charges brought against Greenlight**.  Dkt. 162-99, page 7.

8.    In **December 2011**, CBP opened a formal section 1592 investigation against Greenlight with respect to undervaluation and misclassification to prevent Greenlight from filing a prior disclosure.  ICE officials from LA and SF and CBP Reg. Audit officials appeared at Greenlight for a surprise **unannounced interview of Monica Gill and Sonny Aulakh**.  They served Greenlight with a CBP **Notice of Formal Investigation and a DHS summons** for production of business records. Agent Lafaurie explained that the **Government had reason to**

---

[5] An ICE criminal investigation can be opened only with a request from the ICE agent on the case or his/her immediate supervisor.  ICE has investigative options other than commencement of a criminal investigation.  In this case, the decision to open a criminal investigation had to meet certain standards and the input of more than one agent. This determination reflected the collective belief that the government could establish that the importer had intentionally misstated certain information material to customs valuation and classification.  *See* McAndrew deposition transcript 47:15-50:19; 118:15-143:13; McDavid deposition transcript 39:2-59:24; 75:4-77:7; 84:22-88:10; 101:20-102:10. *See also* McDavid statement and McAndrew statement, attached as **Exhibit B**.

**believe that Greenlight imports were undervalued, misclassified, and mismarked, and that their suppliers One Step Ahead and Wuhan Bizarre were double-invoicing in order to lower declared values on customs entries.** Misty Miller informed Greenlight that CBP's Automated Commercial System ("ACS") data showed that "**Greenlight paid approximately $1.40 to $2 per shirt, which was considerably below the industry average of ~ $4 per shirt.**" Dkt 157-1 pp. 18. Agent Lafaurie noted that CBP's **ACS data showed that 60% of their imports were classified as woven, and Ms. Gill admitted at the meeting that all of their garments should have been classified as knit[6].** .

In summary, there is agreement that in 2011 the Government received and developed detailed and credible information which formed the Government's belief that Greenlight was undervaluing and misclassifying imported garments. In 2011, as a result of these discoveries, ICE opened a criminal investigation and CBP opened a formal section 1592 civil fraud investigation.[7]

Initiation in 2011 of the ICE criminal investigation and the CBP formal section 1592 investigation clearly confirm that these agencies believed that they had discovered potential fraud in 2011. The *ICE publication ICE Investigations: Mission Roles in Multi-Agency Areas of Responsibility* (2007) defines a "**criminal investigation" as one that is "opened when it has been *determined* that violations of criminal laws that are enforced by ICE have occurred or are likely to occur[8].**" (Italics and bolding added.) Similarly, the ICE Office of Investigations

---

[6] During the meeting, the Government obtained records relating to one import entry, but there is no discussion of this entry review in Mr. Soo Hoo's report of this meeting. Dkt 162-21 p. 4.US0002594-2601. Mr. Soo Hoo's affidavit provides the first discussion of the documents reviewed at that time and is questionable in light of the passage of time.

[7] A formal section 1592 investigation permits the Government to claim fraud, gross negligence and negligence. In this case the Government chose to proceed only on the fraud claim.

[8] To establish violations under either 18 USC §542 ("Entry of Goods by Means of False Statements") or 19 U.S.C. §1592, the Government must prove fraud. In *U.S. v. F.A.G. Bearings*

*Case Management Handbook* (2008) defined a **"formal investigation"** as **one that "is opened when it has been *determined* that violations have occurred or are likely to occur."** Dkt 157-1 p. 33 (italics and bolding added).

These are ICE's own definitions, inconvenient as they may now be, and the Government cannot disclaim them just to move this case forward. It is Orwellian to assert that initiation of a criminal investigation in 2011 followed by an appeal to the U.S. Attorney's Office to commence a criminal prosecution of Greenlight does not implicate a belief by ICE/CBP that a crime had been or was likely to be committed. In this case, both language and time are fatal to plaintiff's claims.

## II. THE PLAIN MEANING OF THE WORDS OF SECTION 1621 WITH RESPECT TO FRAUD INVOKES THE DISCOVERY RULE

In denying defendant's motion for summary judgment on November 29, 2018, this Court duly noted in referring to the terms of statute of limitations set forth in 19 U.S.C. §1621 that:

> The language "within 5 years after the date of discovery of fraud" invokes the *discovery rule*, which tolls the statute of limitations period until the date when plaintiff *first learns* of the fraud. *United States v. Spanish Foods, Inc.*, 24 CIT 1052, 1056, 118 F. Supp 2d 1293, 1297 (2000) (*citing United States v. Ziegler Bolt & Parts Co.*, 19 CIT 13, 17 (1995); *United States v. Modes, Inc.*, 16 CIT 879, 887, 804 F. Supp. 360, 368 (1992).

Slip Op. 18-165, docket no. 96, at p. 5 (italics added). The Court acknowledges that the "discovery" rule applies to the issue at bar and correctly states that under the "discovery rule" a customs fraud case the claim accrues when the Government "first learns" of the fraud. The word "discovery" is defined as "an act of finding out or learning of [fraud] for the first time." "Discovery," MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/discovery (accessed 17 Sept. 2021). The Court's reference to the

---

*Corp.*, 615 F. Supp. 562, 569 (Ct. Int'l Trade 1984), the Court recognized that 18 U.S.C. 542 as the criminal law counterpart to 19 U.S.C. 1592.

discovery rule in its opinion is consistent with the plain words of the statute.

The Supreme Court recently commented as follows on the discovery rule in in *Merck &*

*Co, Inc. v. Reynolds*, 559 U.S. 633, 644-645 (2010) (emphasis added):[9]

> We recognize that one might read the statutory words "after the discovery of the facts constituting the violation" as referring to the time a plaintiff *actually* discovered the relevant facts.  But in the statute of limitations context, the word "discovery" is often used as a term of art in connection with the **"discovery rule**," a doctrine that delays actual accrual of a cause of action until the plaintiff has "discovered" it.  **The rule arises in fraud cases as an <u>exception</u> to the general limitation rule that a cause of action accrues once a plaintiff has a "complete and present cause of action."** … **And for more than a century, courts have understood that "fraud is deemed to be discovered … when, in the exercise of reasonable diligence, it could have been discovered**."

These comments are consistent with a number of judicial decisions that describe the "discovery

rule" to include both actual discovery of fraud *and* identification of information which could

result in the discovery of fraud with reasonable due diligence  In *United States v. Spanish Foods,*

*Inc*., 25 C.I.T. 108, 112-113, 131 F. Supp. 2d 1374 (2001), the Court noted, "The state of being

sufficiently on notice for the purpose of the discovery of fraud has been defined by case law to

mean the state at which a party comes to obtain knowledge of the fraud or such information on the

basis of which the fraud could be detected with reasonable diligence."  *See also U.S. v. Neman*, 16

CIT 97, 98 (1992) ( interpreting discovery of fraud as when a plaintiff discovered or reasonably

should have discovered fraud); *U.S. v. Thorson Chemical Corp*., 16 CIT 441 (1992) (recognizing

that the discovery rule of section 1621 applies to fraudulent violations of section 1592 and quoted

*U.S. v. R.I.T.A. Organics, Inc*., 487 F.Supp. 75, 78 (N.D. Ill. 1980), stating that "Customs'

---

[9] The case concerned a private right of action for securities fraud.  The Court discussed the "discovery rule" in the context of a statute that required the filing of a claim no more than 2 years after the plaintiffs "discovered the facts constituting the violation."  The Court held the statute by its terms provided that the cause of action accrued "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation' – whichever comes first."  *Id.* at p. 637 and 648.

'knowledge of the falsity of import documents is a means to discovery of a section 592 violation and, therefore, causes the statute of limitations to begin to run.'"), and *U.S. v. Ziegler Bolt and Parts Co*., 19 CIT 13, 17 (1995) (asserting that courts have construed section 1621 to embrace the discovery rule, which tolls the statute of limitations until a plaintiff learns of fraud or is sufficiently on notice as to the possibility of fraud to discover its existence with reasonable diligence).

By referencing "the discovery rule" in the quotation from Slip Op. 18-165 (previous page), the Court confirmed that section 1621 began to run in this case from the date the Government first learned of the fraud or was sufficiently on notice of the possibility of fraud to discovery its existence with the exercise of due diligence.


### III.   THE COURT'S REQUESTS FOR ADDITIONAL INFORMATION HAVE BEEN ANSWERED, CONFIRMING THAT FRAUD WAS DISCOVERED IN 2011

In denying Greenlight's first motion for summary judgment, this Court concluded,

> More facts are needed to ascertain when the Government *first had knowledge of* Greenlight's fraudulent misclassification and undervaluation activities, including when the Government *began to suspect* a potential double-invoicing scheme and when the Government had *knowledge of an intent to defraud* with respect to misclassification of entries."

*United States v. Greenlight Organics, Inc*., Slip Op. 18-165 (Nov. 29, 2018).   The Government's principal argument in its opposition papers is that fraud was not discovered in 2011, which is not correct.

In May 2011, the Government received Leslie Jordan's complaint information describing Greenlight's undervaluation/double-invoicing and at that point *first had knowledge of* Greenlight's fraudulent undervaluation and *began to suspect* a potential double-invoicing scheme. Ms. Jordan alleged that Greenlight was intentionally filing entries with valuation claims the

importer knew to be false – that is, fraudulent.  Her complaint included evidence of double

invoicing in the form of email correspondence between Ms. Jordan and suppliers One Step Ahead

and Wuhan Bizarre.  The complaint identified Greenlight and the suppliers by name, and

provided entry-specific information and included a copy of emails that in effect stated that the

invoicing program was designed and intended to enable Greenlight to pay less duty.  This

evidence is the basis of more than "mere suspicion."

In 2011, when ICE Agent LaFaurie opened up a criminal customs fraud case against

Greenlight, the undervaluation/double invoicing issue was included as a suspected violation of a

criminal customs statute. e.g. 18 USC 542.    In 2011 there is no doubt that the Government

believed that Greenlight's alleged under-valuations were the result of fraud.

In 2011, the Government *first had knowledge of* Greenlight's fraudulent misclassification

activities and had *knowledge of what it believed to be Greenlight's intent to defraud* with respect

to misclassification of entries. In October 2011, the Government first obtained knowledge of

Greenlight's misclassification of merchandise when it tested two samples of the imported

garments and determined they were knit rather than woven. By December 19, 2011, the

Government had used its data base to confirm that Greenlight had misclassified all entries of

goods purchased from One Step Ahead, approximately 60% of all of Greenlights' entries as

woven garments, and on that date Ms. Gill confirmed that the goods were misclassified because

they were "knit, not woven."

In 2011, ICE Agent Lafaurie opened a criminal customs fraud case against Greenlight that

included the classification issue, thereby indicating that ICE believed that these misclassifications

were a violation of a criminal customs statute e.g. 18 USC 542.  There is no doubt that in 2011 the

Government believed that Greenlight's misclassifications and under-valuations were the result of

fraud.

**Exhibit A** graphically displays evidence supporting the conclusion that the answer to each of the Court's questions (quoted above) were answered during discovery and in our motion for summary judgment filed on August 3, 2021.

## IV.   THE LAW IS CLEAR THAT GREENLIGHT'S ALLEGED FRAUD IN UNDERVALUATION AND MISCLASSIFICATION WAS DISCOVERED IN 2011[10]

The Government's interpretation of the discovery rule in this case ignores years of case law interpreting this rule, the statements of ICE officers with over fifty years of experience investigating fraud claims, the Government's own position in prior court cases, and the Government's definitions in their manuals.  The gist of the Government's position in this case is that fraud is not "discovered" until the Government says so, which would make this an entirely subjective decision under the control of the Government.  Under the Government's interpretation of 1621 there would be no fixed date after which a defendant would no longer be exposed to government enforcement action. The government could even deliberately set aside certain investigations before "identifying sufficient facts," in order to delay the running of the limitations period.  That is not the law.

We urge the Court to closely examine the facts set forth in *United States v. Spanish Foods, Inc.*, 25 C.I.T. 108 (2001), discussed in Def. Memorandum of August 3, 2021. (Dkt. 157-1 pp. 23-25)  The issue was "when Customs came into possession of information or knowledge of facts

---

[10] This argument assumes that the Government's allegations of fraud are justified and appropriate, but should this case go to trial Greenlight will present an explanation for each error identified in its entry documents and establish that there was no intent to defraud the revenue or violate the law.  Since discovery of alleged fraud occurred in 2011, we urge the Court to dismiss this action and not require the defendants to go through the time, expense, and personal upheaval that will be required to go through a trial.

that (1) amounted to more than mere suspicion; and (2) could have led a man of ordinary prudence to learn of the fraud or the possibility of fraud under the particular circumstances." *Id.* at p. 113. Defendant argued that the date discovery was a telephone call between representatives of a law firm and Customs officials.  The Court concluded that the Government officials had no reason to treat the information provided during the call as anything more than information coming from a "tipster," meaning that the call "raised suspicions" but provided no "reliable information."  During the call, defendants did not identify the issue as double invoicing, or provide either the name of the product line or of the exporter selling the product to Spanish Foods.  As a result, Customs officials had "insufficient knowledge to conduct an ACS search and determine the presence of fraud in the entries declared by Spanish Foods." *Id.* p. 116.  As noted in our brief in chief, however, the Court held that "discovery" had occurred after a meeting with the informant, even before the Government had commenced its investigation of this matter.  Def's Second Motion to Dismiss, page 25.

There is a stark contrast between the type and amount of information received during the phone call at issue in *Spanish Foods* and the type and amount of information obtained by the Government in the instant case in 2011.  In the instant case, in 2011 the Government had sufficient information about Greenlight's errors in tariff classification and undervaluation to learn of the fraud or the possibility of fraud.  Plaintiff discovered fraud OR was "sufficiently on notice as to the possibility of fraud" when it initiated its investigations in 2011 based on the Jordan complaint and discovered the misclassification issue through the testing of two samples and its review of its import data on Greenlight.

In September 2011, Special Agent Lafaurie stated in an email to CBP's Alice Nguyen, "I have received an investigative referral regarding a company based out of Sacramento that is

*suspected of undervaluation* and consumer fraud.  *We have not accumulated enough evidence yet to pursue a criminal investigation*, if one is warranted…."  US0003097 (italics added).  The result of that referral is embodied in the response of October 2011 email, in which Customs advised Lafaurie that testing of two T-shirts from a Greenlight entry, which was done at the request of ICE, revealed the garments were knit rather than woven (as declared upon entry), and which resulted in the underpayment of duty on this entry.  Within four days, acting on this information and the information received from Ms. Jordan, Special Agent Lafaurie advised CBP officials that ICE had opened criminal case LA089CR121A0011 against Greenlight and the case covered both undervaluation and misclassification.  Dkt. 157-1 p. 15.

Clearly, in October 2011 once the Government had accumulated what they considered to be "enough evidence," they did open a criminal case covering both undervaluation and misclassification.  In November 2011, Special Agent Lafaurie approached the U.S. Attorney's Office to press criminal charges against Greenlight.  Thus, in 2011, plaintiff identified for the first time what it believed to be fraud in Greenlight's import activities and the statute of limitations began to run.

In *United States v. $116,000 in United States Currency*, 721 F. Supp. 701, 703-704 (D.N.J. 1989), the court stated:

> It is certainly consistent with the ordinary and usual sense of the language "alleged offense was discovered" to conclude that seizure of property is either contemporaneous evidence of an alleged offense, or the result of prior discovery of an offense. **It is also consistent with the common meaning of the language to conclude that in the absence of seizure, an offense is "discovered" when knowledge of the alleged wrong is received.** Presumably such a conclusion prompted the district court in R.I.T.A. Organics to declare that an offense was "discovered" when a 'party discovers or possesses the means to discover the alleged wrong, whichever occurs first.' While this Court is not bound by the decisions of a sister court of coordinate jurisdiction, the foregoing cases comport with this Court's understanding of the ordinary and usual sense of the language at issue." *Id*. at 703-04 (*quoting R.I.T.A. Organics,* 487 F.Supp. at 77–8). … [*Id*. p. 703-704]

> **Furthermore, under the government's definition of "discovered," the statute of limitations for forfeitures would not commence until the government said so, that is, until the government declared that it had uncovered sufficient facts. Such a result would turn legislative judgment on its head."** [*Id.* p. 705]

There is no reason to interpret the statute of limitations differently for section 1592 fraud penalty cases than for forfeiture cases.[11] If we substitute in the word "fraud" for "an offense" we have the discovery rule as it should be applied in this case.

The legislative history of an amendment to 19 USC 1621 also provides insight into the discovery rule. In this regard, in 2000, Representative Henry J. Hyde, Chairman of the House Judiciary Committee, noted in speaking on the House floor in support of an amendment to clarify the civil forfeiture provision of section 1621,

> 19 U.S.C. §1621 has been construed as requiring the government to exercise reasonable care and diligence in seeking to learn the facts disclosing the alleged wrong. Thus, **the courts have held under §1621 that the time begins to run as soon as the government is aware of facts that should trigger an investigation leading to discovery of the offense.** See Smith, 1 *Prosecution and Defense of Forfeiture Claims*….

146 Cong. Rec. H2051 (daily ed. April 11, 2000) (added bolding). Since the Government in this case actually initiated a criminal investigation in 2011, that year includes the date of discovery of the fraud. This is entirely consistent with multiple Government publications that we have included in our motion papers and with the opinions of retired ICE agents Mr. Mc Andrew, and Mr. Mc David, who under oath provided the benefit of their experience to the court in this case.

---

[11] Nor is the discovery test interpreted any differently in actions where the Government is a party litigant. At Page 15 of Pl. Opposition, the Government cited *E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924), for the proposition that Government is entitled to a strict construction of the statute of limitation. .Dkt 162-1, p. 15. *E.I. Du Pont*, is an unusual case where the court found that the wrong statute of limitations had been cited by the defendant. (Since the statute that was cited applied to "all actions at law by carriers subject to [the Transportation Act 1920]," the court reasoned that the statute had no application to the action at bar.) There is no question that section 1621 is the statute of limitations that applies in the instant case.

The Government's argument in the instant case is very similar to the one the court rejected in *United States v. Shabahang Persian Carpets, Ltd.*, 926 F. Supp. 123 (E.D. Wis. 1996), a civil penalty case arising under 19 U.S.C. §1595.  The Government argued in that case that, even though it had probable cause to suspect customs violations (smuggling), it did not possess the means to discover the alleged violations until after it had obtained the importer's business records in June 1989.  Based on information it received about four Shabahang import shipments, however, a CBP officer concluded in May 1989 that there was a "high probability" of customs violations.   The court ruled the case barred by the statute of limitations (19 U.S.C. §1621) because "the government simply waited too long before it filed this action."  The discovery rule, which was applied in that case, incorporated the "knew or should have known" standard.  *Id.* at 125-126.  In the instant case, events of 2011 demonstrate that the Government believed Greenlight's import activities demonstrated a high probability of fraud.

The Government has recognized that "[t]he text of section 1621 identifies a sole task for the factfinder: to determine 'the date of discovery of fraud' . . . 'the date of discovery of fraud' involves a factual inquiry, not a speculative exercise" and correctly asserts that an investigation of fraud requires the specialized training and knowledge of law enforcement officers with specialized training.[12]  Dkt. 162-1, pp. 18-19.  The statements of retired ICE officers Patrick McDavid and James McAndrew relating to their experiences in the conduct of ICE investigations help to clarify the date of discovery of fraud in this case. (*See also* additional statements of Mr.

---

[12] In support of its assertion that courts are reluctant to allow the judgment of trained law enforcement officers to be substituted with outside opinions, the government cites *Harman v. Pollock*, 586 F.3d 1254, 1265 (10th Cir. 2009). This case is not applicable to the discovery of fraud under section 1621 and has been cited out of context. The case is limited to the context of reasonable-suspicion determinations in Fourth Amendment searches and seizures. *See also U.S v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981) (using the same language specifically to assess whether a stop satisfied the Fourth Amendment).

Mc Andrew and Mr. Mc David, attached as **Exhibit B**, which provide additional insight into ICE procedures and significance of the commencement of a criminal fraud case and contact with AUSA to commence a criminal prosecution).   We urge the Court to accept their expert testimony to assist the court.   *See* Fed. R. Ev. 702; Advisory Committee Notes, 1972 Proposed Rules.

The date of the commencement of the statute of limitations is not delayed until the Government concludes that it intends to commence a fraud case against a potential defendant. ICE agent Lafaurie's title was criminal investigator, which means that he investigated possible crimes--- criminal violations of the Customs laws. Once he discovered the facts of the fraud ICE commenced a criminal fraud investigation.   In his deposition, Agent Lafaurie specifically stated that he does not "make an estimation of whether or not double invoicing could be potential fraud" and in response to the question "would you consider intentional misstatements on a customs entry to be fraud?" he responded: "I don't make those kind of determinations. Like I said, I'm just an information gatherer." Lafaurie deposition transcript 13:8-19.   See also Lafaurie deposition transcript 15:3-6.

ICE at any time could have ended the case or referred it to CBP.   ICE chose to open a criminal investigation because ICE determined that criminal violations had occurred *and* were likely to occur.   Dkt 157-1 p. 33.   The commencement of a criminal investigation on both issues in 2011 is *ipso facto* evidence that the Government had discovered what it believed to be fraud at that time.

Nor is the date of commencement of the statute of limitations delayed until February 2012, when the CBP auditors began to review Greenlight documents.   CBP auditors' review of facts in documents related back to the undervaluation allegations made by Ms. Jordan and the misclassification violations identified in 2011.   They gathered facts and documents to determine

the loss of revenue, not to determine the level of culpability involved in the importer's import activity. *See* US00019579 (The Field Director of CBP Regulatory Audit San Francisco Field Office stated "our objective was to assist HSI in determining whether Greenlight was in compliance with [CBP] regulations in the areas of value and classification, and if not, compute the loss of revenue. ... [D]uring our audit, we identified undervaluation, double invoicing, and non-dutiable charge errors that resulted in . . . estimated loss of revenue.")

The determination that the Government would allege fraud against Greenlight was not made until sometime after audit was completed and the final audit report was issued, in which CBP auditors "assessed the risk of fraud" and after the company had declined to provide CBP with a SOL waiver.[13]  US0002051-US0002066; US0002268.   After that determination was made, the CBP Assistant Chief Counsel in San Francisco cautioned in 2013 that, although there was sufficient evidence to support a fraud claim, the date of discovery was likely in 2011. US0002268–69.


V.      CONCLUSION

The discovery of the facts that constitute the violation begins commencement of the statute of limitations.  The statute of limitations began to run in the instant case in 2011 when the government first learned of Greenlight's misclassification and undervaluation and initiated formal criminal and civil investigations to substantiate the information they had already obtained. Accordingly, defendants respectfully request that this Court grant its motion, enter summary judgment for defendants, and dismiss this penalty action brought under 19 U.S.C. § 1592.

---

[13] The Government has yet to identify any documents to show that Greenlight intended to make false statements in its entries.  There are no "smoking gun" documents that indicate any intent by Greenlight to defraud the Government by filing false entry documents.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
Attorneys for Defendants
599 Lexington Avenue
36th Floor
New York, New York 10022
Tel. (212) 557-4000
RSilverman@GDLSK.com

By:   /s/ Robert B. Silverman
        Robert B. Silverman
        Robert F. Seely
        Joseph M. Spraragen

Dated:  September 27, 2021
         New York, New York

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Robert Silverman, counsel to defendants, certify that Defendants' Memorandum in Support of its Motion for Summary Judgment complies with the word count limitation contained in the Chambers Procedure 2(B)(2) of the U.S. Court of International Trade.  Based on the word count feature in the word-processing software used, this document contains 5,930 words.


<u>/s/ Robert B. Silverman</u>
Robert B. Silverman



Date:  September 27, 2021
        New York, New York