UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | Before: Jennifer Choe-Groves, Judge |
| | ) | |
| v. | ) | Court No. 17-00031 |
| | ) | |
| GREENLIGHT ORGANIC, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PARAMBIR SINGH "SONNY" AULAKH | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' PROPOSED REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO CERTIFY AN ORDER FOR INTERLOCUTORY APPEAL

Defendants Greenlight Organic, Inc. and Parambir Singh ("Sonny") Aulakh (together referenced as "defendants") respectfully submit this reply to plaintiff's ("the Government") response to Defendants' Motion to Certify an Order for Interlocutory Appeal. *See* ECF No. 173 ("plaintiff's Response"); ECF No. 171 ("defendants' Motion").

On August 12, 2022, defendants submitted a motion positing that the Court's Opinion and Order of August 4, 2022, Slip Op. 22-87, denying Defendants' Motion for Summary Judgment, involved a controlling question of law as to which there is a substantial ground for difference of opinion and requested an immediate appeal from that order that would materially advance the ultimate termination of the litigation. ECF No. 171. Defendants moved the Court to certify the following controlling question of law for interlocutory appeal in accordance with 28 U.S.C. § 1292(d)(1):

Whether, based on the "discovery rule," the five-year statute of limitations, set

forth in 19 U.S.C. § 1621, for commencing a fraudulent civil penalty enforcement action in the United States Court of International Trade brought under 19 U.S.C. § 1592, begins to run from the date the Government is sufficiently on notice as to the possibility of fraud to discover its existence with the exercise of due diligence or on the date of documented confirmation of the fraud.

ECF 171, at p. 2.

On August 25, 2022, defendants filed a motion for rehearing of this decision with the Court requesting the Court to acknowledge that certain facts did occur in 2011 and once the Court amends its prior decision to grant defendants' motion for summary judgment. *See* ECF 172. We apologize to the Court for presenting these points in separate motions as opposed to one consolidated motion to accomplish our objectives, and we hope that the Court will consider these two motions at the same time.

In its response to defendants' Motion to certify a question for an interlocutory appeal, plaintiff asserts that the motion should be denied because there is a dispute over facts. ECF 173, at p. 2. Plaintiff argues that "[t]he receipt of allegations of violations of customs law, and the Government's efforts to vet allegations, are irrelevant to the date the statute of limitations accrues. Rather, Congress specified that there is one, simple fact to address where fraud is alleged: 'the date of discovery of fraud.' . . . . Section 1621 makes clear that the 'date of discovery of fraud,' is a purely factual inquiry – the date that fraud was *actually discovered in each case*." ECF 173, at p. 3 (internal citations omitted). Plaintiff mischaracterizes both the law and facts relating to the discovery of fraud and diminishes that certain events occurred in 2011, which triggered the statute of limitations to run for a fraud claim under 19 U.S.C. § 1592. Accordingly, the Court should dismiss plaintiff's arguments.

**DISCUSSION**

I.     <u>The Facts Relating to the Events That Occurred in 2011 Are Not In Dispute.</u>

The following events occurred in 2011: (1) The Government received a complaint from Ms. Leslie Jordan in 2011 alleging that Greenlight was misdescribing and undervaluing its merchandise in order to pay less customs duty than would otherwise have been due; (2) ICE officially opened a criminal undervaluation and misclassification case against Greenlight (case no. LA08CR12LA0011); and (3) CBP opened a Formal Investigation of Greenlight with respect to misclassification and undervaluation of imported apparel. ECF 171, at p. 5. Despite diminishing the significance of the facts relating to the content of Ms. Leslie Jordan's 2011 "complaint" and the Government commencement of formal investigations of Greenlight in 2011, ***it is significant that plaintiff does not deny in its reply that these events occurred; the fact that these events occurred in 2011 cannot be disputed***. Plaintiff also does not deny that these events occurred as defendants have laid out. Accordingly, the Government itself acknowledges and does not dispute the occurrence of events that caused the statute of limitations to begin to run in 2011.

II.     <u>Plaintiff Mischaracterizes the Law.</u>

Plaintiff mischaracterizes 19 U.S.C. § 1621 by failing to recognize that the statute invokes the "discovery rule." As identified in defendants' Motion, this Court has acknowledged that Section 1621, which sets forth the statute of limitations for 19 U.S.C. § 1592 penalty fraud action, invokes the discovery rule and that this Court has previously defined the date of discovery as "***the date when the plaintiff first learns of the fraud <u>or is sufficiently on notice as to the possibility of fraud to discover its existence with the exercise of due diligence</u>***." Slip Op.

3

22-87, ECF No. 170, at p. 9 (quoting *United States v. Spanish Foods, Inc.*, 24 CIT 1052, 118 F. Supp. 2d 1293 (2000)) (emphasis added).

Plaintiff argues instead that the discovery of fraud under Section 1621 occurs only when fraud was *actually* discovered (and not when the plaintiff receives information/first learns of facts which enables it to detect fraud with reasonable due diligence). This argument is in direct contradiction with numerous judicial decisions, including those issued by this Court. *See, e.g.*, *Merck & Co. v. Reynolds*, 599 U.S. 633, 645 (2010) (stating that "for more than a century, courts have understood that 'fraud is deemed to be discovered … when, in the exercise of reasonable diligence, it could have been discovered.'"); *U.S. v. Spanish Foods, Inc.*, 24 CIT 1052, 118 F. Supp. 2d 1293 (2000); *U.S. v. Spanish Foods, Inc.*, 25 C.I.T. 108, 131 F. Supp. 2d 1374 (2001); *U.S. v. R.I.T.A. Organics, Inc.*, 487 F. Supp. 75 (N.D. Ill. 1980); *U.S. v. Ziegler Bolt & Parts Co.*, 19 C.I.T. 13 (1995), *U.S. v. Modes, Inc.*, 16 C.I.T. 97 (1992).  Further, plaintiff fails to cite any case law to support its position that the statute of limitations begins to run only on the date of actual discovery of fraud. Accordingly, plaintiff's assertion that the discovery of fraud under Section 1621 occurs only on the "date that fraud was *actually discovered in each case*" is a blatant misrepresentation of the statute and case law interpreting the discovery of fraud thereunder.

Plaintiff argues that "there is no 'pure question of law' that is 'controlling'" and that interlocutory appeal is inappropriate where summary judgment was denied because facts remain in dispute. ECF 173, at pp. 8, 9. In support of these arguments, plaintiff cites *Johnson v. Jones*, 515 U.S. 304 (1995) and *Cantu v. Rocha*, 77 F.3d 795 (5th Cir. 1996). In these two cases, the Courts assessed whether they had appellate jurisdiction to review the trial court's denial of motions for summary judgment in qualified immunity cases. In both cases, the court did not

assess whether a controlling question of law existed under 28 U.S.C. § 1292, but assessed the immediate appealability of claims made by public officials asserting qualified immunity defenses.

Plaintiff mischaracterizes the legal question defendants asked this Court to certify for appeal in defendants' Motion and the nature of the Court's decision of August 4, 2022, denying defendants' Motion for Summary Judgment. Plaintiff states that defendants have not set forth a controlling question of pure law and that "defendants omit that the Court's August 4 opinion did not turn upon an interpretation of law. Rather, the Court denied defendants' summary judgment motion because facts remain in dispute, and the Court 'can only consider undisputed facts, not disputed facts, for summary judgment.'" ECF 173, at p. 9.

In support of the assertion that defendants do not present a "pure" question of law, Plaintiff quotes cases stating that "questions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." ECF 173, at p. 7 (quoting *In re Facebook*, 986 F. Supp.2d at 536; *Fiscus v. Combus Finance AG*, No. 03-1328, 2006 WL 2845736, at *2 (D.N.J. Sept. 28, 2006). However, defendants have set forth a pure question of law which should be considered on appeal. Defendants' question does not require an assessment of the underlying facts of this case, but involves a pure assessment of the underlying law – whether the statute of limitations set forth in 19 U.S.C. § 1621 begins to run for purposes of actions brought under 19 U.S.C. § 1592 when the fraud is discoverable with due diligence or on the date of actual discovery. The facts to support defendants' interpretation of the discovery rule at issue are undisputed and set out in the earliest point in this memorandum. As noted above, these facts are undisputed. All that remains is for the Court to apply the discovery rule to those facts. Once that is done, the case will be dismissed or the case should be certified for appeal.

**III.   Plaintiff Raises Red Herrings to Divert the Court.**

Because the Government cannot deny that these 2011 events occurred, plaintiff attempts to prejudice the Court by discussing an often relied upon red herring that it has asserted a number of times in this case that has nothing to do with the Motion before the Court. In this regard, the Government alleges without proof that Greenlight "concealed" or destroyed company records and was slow to produce records that were requested which should delay the commencement of the running of the statute of limitations. *See* ECF 173, at p. 4. The thrust of this point is that on December 19, 2011, the Government made a visit to Greenlight's office, where records were requested and a summons for record production was served. Plaintiff asserts that the records the Government requested from Greenlight were routine transaction records, such as invoices and purchase orders that should have been on hand and that "defendants waited almost two months – until February 9, 2012 – to submit a partial response." ECF 173, at p. 4.

First, it is significant that Government employees conducted a ***surprise*** raid of Greenlight's office on December 19, 2011, without any notice, thus providing Greenlight no opportunity to prepare and organize its office and the documents kept there. And, by the same token, providing no opportunity for Greenlight to destroy records in anticipation of a visit by the Government.

Second, Greenlight's failure to provide records immediately does not constitute "concealment." When the Government conducted a surprise raid of Greenlight's office, Greenlight employee Monika Gill directed CBP auditors and ICE Agent Sean LaFaurie to Greenlight's single file cabinet, which contained few records. US0002596 (Record of Discussion of December 19, 2011, stating "Sean asked where Greenlight maintained their records. Ms. Gill said that they had some physical documents in the office (pointing to a small filing cabinet), but

6

most of it was sent and maintained in emails. Ms. Gill said that they were really unorganized because of short staffing.") *See also* Monika Gill Deposition transcript 74:3-6; 75:6-15 (stating "CBP records, we did not keep them. Did not know that we needed to keep them" and "[Greenlight's office] had a filing cabinet, but there were no records in that filing cabinet."). The auditor was given any documents that were on hand at that time. US0002598, US0002599 (Record of Discussion of December 19, 2011, stating "Monika opened several example invoices . . . ." and "[CBP auditor] Lorna began reviewing some of the sample entry packages.") Accordingly, Greenlight's failure to immediately produce substantial records during the raid was simply because it did not have them on hand.

Moreover, that fact that Greenlight did not produce records until February 9, 2012 does not add to the Government's claim. In this regard, the customs regulations require production of records relating to the entry of merchandise within a ***reasonable time*** after demand by CBP is made. 19 U.S.C. § 1509(a)(1)(A); *see also* Appendix to 19 C.F.R Part 163 (stating 19 U.S.C. 1509(a)(1)(A) "requires the production, ***within a reasonable time after demand*** by the Customs Service is made (taking into consideration the number, type and age of the item demanded) if 'such record is required by law or regulation for the entry of the merchandise (whether or not the Customs Service required its presentation at the time of entry).'"(emphasis added)). Section 163.6 of Title 19 to the Federal Regulations states that "***[a]ny oral demand for entry records shall be followed by a written or electronic demand***" and that "[t]he entry records ***shall be produced within 30 calendar days of receipt of the demand*** . . . ."  19 C.F.R. § 163.6 (emphasis added). This section also provides for the extension of time to respond to CBP's request for entry

records. In this case, Greenlight submitted an extension request to CBP, which was granted.[1]

Here, Greenlight's response to the summons on February 9, 2012, was 18 days beyond the

standard response time to a CBP inquiry and well within a time that CBP regularly allows

importers to respond. Accordingly, plaintiff has misrepresented the circumstances within which

Greenlight provided documents to the Government, which provide no indication of

"concealment."

Finally, the Government's claim that the February 9, 2012 production was the date that

fraud was confirmed is a litigation position that does not ring true. Plaintiff asserts that the

documents Greenlight submitted to the Government on that date revealed that Greenlight

"intentionally submitted falsified values associated with athletic apparel GREENLIGHT

imported." ECF 173, at p. 4. However, the documentation that was submitted merely reflected

that Greenlight paid a greater amount to the seller than the entered value. The documentation

does not show that Greenlight "intentionally submitted falsified values" – it does not show fraud.

Fraud concerns the importer's intent at the time of filing a customs entry. Here, the record shows

that Greenlight has maintained throughout that it believed that its invoicing practice was

legitimate because Greenlight believed that no duty was due on transportation costs, which were

included in the higher invoice prices. Monika Gill Deposition transcript 64:16-18; 53:23-54:9

(stating that Monika "didn't know what double invoicing was" and that Monika told CBP

auditors during the December 19 visit that "we do have two invoices but not in the manner that

you're explaining . . . We have freight that is being deducted." Also stating that Monika did not

---

[1] In a separate vein when CBP requests records pursuant to a Request for Information (CBP Form 28), the receiving party has 30 days from the date of the request to respond. It is common practice for CBP to grant to importers 30-day extensions for their response. In fact, CBP oftentimes grants multiple 30-day extension requests for responses to CBP Form 28s. *See* a blank CBP Form 28 attached as **Exhibit A** (stating "[i]f a reply cannot be made within 30 days from the date of this request or if you wish to discuss any of the questions designated for your reply, please contact the CBP officer whose name appears on the front of this form").

believe that Greenlight had done anything wrong at the time of the Government's surprise raid on December 19, 2011).

Numerous, undisputed, events took place prior to February 2012 that establish that the Government was on sufficiently notice as to Greenlight's "alleged" fraud so as to trigger the running of the statute of limitations:

1. On May 31, 2011, Ms. Jordan sent Los Angeles Special Agent Scott Smith of ICE, HIS an 11-page "complaint" alleging that Greenlight was misdescribing and undervaluing its merchandise in order to pay less customs duty than would otherwise have been due. The "complaint" included a detailed list of shipments, identifying 14 entries from Wuhan Bizarre and 94 entries from One Step Ahead, which together account for 72.97% of the total number of entries in this case. Defs.' SMF ¶ 2, ECF No. 157-1 (citing Ex. B); Defs.' Reply to Pl.'s Opp. to Defs.' Mot. for Summ. J., ECF No. 168, at p. 6; Defs.' Mot. for Summ. J., ECF No. 157-1, at 20.

2. In 2011, ICR commenced a criminal investigation of Greenlight.

    a. On September 23, 2011, Lafaurie prepared and submitted a "Request for Audit Assistance on Enforcement Activity" in support of ICE criminal investigation on Greenlight to the Office of Regulatory Audit at the CBP, stating that audit assistance was requested to support **an ICE criminal/civil investigation into Greenlight with respect to misclassification and undervaluation.** Defs.' SMF ¶ 5, ECF No. 157-1 (citing Ex. E);

    b. On September 26, 2011, LaFaurie sent a "Collateral Request for Investigative Assistance" to the ICE Attaché in Vietnam, asking that office to gather information relevant to the Greenlight investigation during the period of 2007 through 2011. Defs.' SMF ¶ 6, ECF No. 157-1 (citing Ex. F).

    c. On October 13, 2011, Agent Lafaurie advised CBP Assistant Field Director of Regulatory Audit Tchu and CBP auditor Louie that ICE officially opened a criminal case again Greenlight and case number LA08CR12LA0011 was assigned to the case. Defs.' SMF ¶ 8, ECF No. 157-1 (citing Ex. H).

3. The Government  used the word "fraud" on November 2, 2011, when CBP auditor Metter R. Tchu stated that CBP believed that Greenlight "is involved with fraud" and that "[p]rior notification can result in requests for delay of the audit, hiring an attorney, endless delay tactics during the audit, filing a prior disclosure protecting them from

9

penalty action, and potentially destroying/altering evidence." Defs.' SMF ¶ 9, ECF No.
157-1 (citing Ex. H).

4.  On November 3, 2011, Agent Lafaurie advised ICE Group Supervisors Ana K. Salazar
    and Glazner by email that "we have opened the Greenlight case
    LA08CR12LA0011[which is a criminal case based on the code used to identify the case]
    and have enlisted the assistance of San Francisco Reg. Audit to assist..." Defs.' SMF ¶
    11, ECF No. 157-1 (citing Ex. H).

5.  On November 23, 2011, at a "strategy meeting" with ICE special agents (including
    LaFaurie) and CBP Auditors Tchu, Louie and CBP Import Specialist Fuller, ICE Special
    Agent Brenny noted that ICE "would like to pursue this case criminally under 18 USC
    542 for false classification of goods and double invoicing..." Defs.' SMF ¶ 11, ECF No.
    157-1 (citing Ex. J).

6.  On or before December 19, 2011, CBP regulatory auditor Louie opened a Formal
    Investigation of Greenlight with respect to misclassification of knit apparel under the
    tariff codes for woven apparel and the undervaluation of imported apparel, which CBP
    believed would result in a loss of revenue. Defs.' SMF ¶ 16, ECF No. 157-1 (citing Ex.
    L).

7.  On December 19, 2011, at the surprise raid of Greenlight's office, Auditor Louie
    presented Greenlight with a CBP written notice of formal investigation under 19 U.S.C.
    1592 which covered customs fraud by undervaluation, misclassification, false-labelling
    and double invoicing. Special Agent Lafaurie served the principals of Greenlight with a
    DHS Summons. Defs.' SMF ¶ 17, ECF No. 157-1 (citing Exs. L, M).

Against this background, plaintiff's asserted discovery date in February 2012 should be

dismissed by the Court, because ICE had already commenced a criminal investigation of

Greenlight in 2011. The commencement of a criminal investigation based on Government

guidelines establishes that the Government found a likelihood that fraud occurred or that it would

be occurring in the future. *See* DHS OI *Commercial Trade Fraud Investigations Handbook* (OI

HB 07-03, December 3, 2007); ICE publication, *ICE Investigations: Mission Roles in Multi-*

*Agency Areas of Responsibility* (August 2007); ICE Office of Investigations publication, *Case*

*Management Handbook* (OI HB 08-02; February 1, 2008).

Thus, plaintiff has misrepresented the nature of the documents Greenlight provided to the Government, which do not establish fraud and accordingly do not support that the production of records in February 2012 is relevant to the date when the statute of limitations began to accrue.

## **<u>CONCLUSION</u>**

Plaintiff has misrepresented both the law and facts relating to the discovery of fraud and has, without denying the fact that they occurred, diminished the significance of certain events that occurred in 2011 which triggered the statute of limitations for a fraud claim under Section 1592. Plaintiff has further mischaracterized the legal question that defendants asked the Court to certify for appeal. Accordingly, the Court should disregard plaintiff's arguments and grant defendants' motion to certify the Court's August 4, 2022 Opinion and Order for interlocutory appeal.

Respectfully submitted,

Attorneys for Defendants Greenlight Organic, Inc. and Parambir Singh ("Sonny") Aulakh:

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP
599 Lexington Avenue
36th Floor
New York, New York 10022
Tel. (212) 557-4000
JSpraragen@GDLSK.com

By:    /s/ Joseph M. Spraragen
         Robert B. Silverman
         Joseph M. Spraragen

Dated:  September 16, 2022
          New York, New York

11

## **CERTIFICATE OF COMPLIANCE**

I, Robert Silverman, counsel to defendants, certify that this brief, Defendants' Proposed Reply to Plaintiff's Response to Defendants' Motion to Certify an Order for Interlocutory Appeal, complies with the word count limitation contained in the Chambers Procedure 2(B)(2) of the U.S. Court of International Trade. Based on the word count feature in the word-processing software used, this document contains 3,488 words.

/s/ Robert B. Silverman

Robert B. Silverman

Date:   September 16, 2022

        New York, New York